## JONAS BARTLETT AND ADDISON B. GATES, APPELLANTS, v. CHARLES ROBINSON, RESPONDENT.

*Promissory Note—Endorser—Specified Residence—Protest—Notice.*

When the endorser of a promissory note, made and payable in the city of New York, at the time of such endorsement, adds to his name a designation of his residence (e. g., 214 E. 18th st.) where he continues to reside, notice of protest of the note, if deposited in the post-office, must, in order to charge him, be addressed to him at that place ; otherwise, if he do not receive the notice, he will not be liable as endorser.

An endorser has the right to designate the place to which notice of protest shall be sent, and such direction must be observed, or he will not, if he do not receive notice, be charged.

The statute of 1857, which in certain cases authorizes the service of notice of protest on the endorser, by depositing it in the post-office of the city or town in which he resides, "directed to him at such city or town," was not intended to abridge the right of the endorser to make such designation of a place within such city or town to which notice might be addressed, and his designation must be observed.

THIS action is brought against the Defendant herein, as endorser of a promissory note, dated "New York, July 18th, 1860," made by J. Bryant Smith, which the Defendant endorsed in the following form, viz. : "Chas. Robinson, 214 E. 18th st."

At the time he endorsed the note he resided at the place so designated, and continued to reside there to the time of the trial of the action.

The note was duly presented for payment in the city of New York, where it was payable, and was protested, and on the next day the notary deposited in the post-office, in the city of New York, a notice of such protest, addressed, " Chas. Robinson, Esq., city of New York," and paid the postage thereon.

The notice did not reach the Defendant, and he did not receive any notice of such protest.

There were at least two other persons of the name of Charles Robinson residing in the city of New York at the time of the making, and at the time of the protest of the said note.

By a statute of the State of New York, passed in 1857 (Laws of 1857, chap. 416) it is provided that, " Whenever the residence or place of business of the endorser of a promissory note . . . . . shall be in the city or town, or whenever the city or town indicated under the endorsement or signature of such. endorser as his or her place of residence . . . shall be the same city or town where such promissory note . . . is payable or is legally presented for payment . . . all notices of non-payment . . . of such promissory note . . . may be served by depositing them, with the postage thereon prepaid, in the post-office of the city or town where such promissory note . . . was payable or legally presented for payment . . . directed to the endorser . . . at such city or town."

On a trial of the action before a referee, the service of notice upon the endorser was held insufficient, and judgment was rendered for the Defendant. The judgment was affirmed in the Supreme Court, in General Term, in the First District.

The Plaintiffs appealed to this Court.

*Thos. Stevenson* for Appellant.
*Wm. W. Niles* for Respondent.

WOODRUFF, J.—The condition of the liability of the endorser of a promissory note is, that if upon due demand the note is not paid by the maker, the holder shall give him notice thereof, in order that he may take measures for his own security or protection.

The use of due diligence by the holder to bring such notice home to the endorser stands, by law, in the place of actual notice, even though it be ineffectual, and fails to bring home knowledge to the endorser.

In all cases, then, in which the endorser fails to receive notice (he having done nothing to waive or dispense with it), the question of liability becomes one of diligence. Has the holder used reasonable diligence to give the endorser notice?

That is a question partly of fact, and partly of law, and must be determined according to the circumstances of each case.

What will constitute reasonable diligence in every supposable set of circumstances, cannot be decided by any unvarying rule. Certain efforts, when proved to have been made, have been passed upon by the Courts, and, prior even to adjudication, been so accepted by mercantile usage and acquiescence, that they may be stated as rules for the guidance of all holders of bills, and the instruction of all endorsers, and it will be seen that they adapt themselves to the changes in the condition of things, and to the conveniences and necessities of business.

Thus, in the earlier history of the subject, it was necessary to carry the notice, or send by some messenger, so as to be able to prove its delivery. When communication was established by regular post, under such governmental or official responsibility that a presumption of safe carriage was warranted, and the usages of business men to take their correspondence from such officials in due course were recognized—held, then reasonable diligence was satisfied by the immediate despatch of notice by the post, properly addressed, to the endorser. So delivery of notice at the residence or usual place of business is held reasonable diligence, because the habits of business and of life make it unreasonable to require the holder to pursue the person to whatever place he may at the time happen to be, and also because, presumptively, and according to the ordinary experience of men, a notice so left will come to his hands.

And so, also, when the residence is unknown. Then diligence in the endeavor to find the person, or to learn his residence, or place of business, is deemed all that it is reasonable to require, and that will stand in the place of notice.

Every relaxation of the rule, that actual notice shall be given, is founded on the idea that reasonable convenience in respect to the mode of giving the notice, and reasonable diligence in the endeavor to bring it home to the endorser, should stand instead thereof, or be deemed equivalent to actual notice, and, therefore, it shall avail to the holder, whether it is effective in bringing notice home to the endorser or not. But immediately out of this relaxation grows another correlative right of the endorser to pre-

scribe the place to which such notice may be sent, when he makes his endorsement. He enters into the contract presumptively with knowledge that he may receive personal notice, or that the notice may be sent to his residence or place of business. He knows what contingencies may happen under which a notice so left may fail to reach him in due season. He may know of arrangements of his own which make it important that, in order to reach him in due season, the notice should be forwarded or delivered at a particular place. Now, it is settled that, if he designate such place, the holder may give notice at that place. This is so settled, because it is reasonable diligence on the part of the holder to deliver the notice at the place where the endorser has appointed to receive it, and because, to hold that such notice is not sufficient, is to permit the endorser to mislead the holder, and practically to defraud him.

The designation of the place, by underwriting at the time of his endorsement, is, therefore, an invitation to the holder to deliver a notice, addressed to him as endorser, at that place, and concludes him, so that he may not deny that, for all the purposes and conditions of the endorsement, that shall be deemed his residence or place of business. If he have actually removed, and that fact is known to the holder, another question would arise; but in the first instance, it is clear that a notice at that place should be deemed sufficient to bind him. Why, then, should not the obligation of the holder, who accepts an endorsement with such a designation, and the obligation of the endorser who makes the designation, be reciprocal? I think they are, and that such designation should be deemed a qualification of the endorsement, and import that notice shall be personal, or by delivery at the place designated.

If this be so, then the decision of this case does not depend upon the particular construction of our statute of 1857, but upon a broader inquiry. Thus, before our statute, if the endorser resided in the same town or city with the party seeking to charge him, the notice must be given by actual delivery to him, or at his residence, or place of business. And a delivery, if not personal, would be sufficient at the place designated, and, in my

opinion, must, in order to charge him, be delivered there. If they did not reside in the same town or city, then a notice sent by mail, and, in order to that, deposited in the post-office, addressed to him at the city or town in which he resides, was sufficient; and if there be more than one post-office in the same township, then addressed to the post-office at which the endorser usually receives his letters.

Now, our statute has substituted a deposit of the notice in the post-office in the same city or town in which presentment for payment is made, " directed to the endorser at such city or town," for the actual carriage, or sending the notice by a messenger, to the residence in certain cases, and among them, " whenever the residence or place of business of such endorser shall be in such city or town."

I apprehend that all that was intended by this statute (in its bearing upon this case) is that, in view of the perfection of our postal system, and the general certainty that men of business will receive letters directed to them coming into our post-offices, such deposit of notice shall be accounted reasonable and sufficient diligence to notify an endorser, as well when he resides in the same town as when he resides in another, and that the statute has no bearing whatever upon the right of the endorser to designate the place to which the notice shall be addressed, the right of the holder to act in pursuance of that designation, the binding effect of such a designation on the endorser, or the obligation of the holder who accepts an endorsement so qualified. And, therefore, as well when the parties do not reside in the same city or town, as when (according to our statute) they do, or, in short, whenever notice is sent by mail, or deposited in the post-office, the notice must be directed to the endorser, not only at the city or town, but to the specific place designated by the under-writing.

In our cities and large towns, where there are often many persons of the same name, such underwriting is very important as a descriptive designation of the endorser, and not only appoints the place where the endorser desires to have the notice come, but

tends to identify the person who is entitled to the benefit of the notice.

I think, therefore, that a compliance with what is said to be the letter of the statute, by writing the name of the endorser, and the name of the city, is not satisfying the requirement, that reasonable diligence should be used, and that a just interpretation of the statute requires that the words " directed to the endorser at such city or town," includes, as a part of such " direction," conformity to the prescription which the special endorsement imports.

To the suggestion that the holder ought not to be compelled to take the risk of the handwriting of the endorser, and that if he direct the notice to the designated place, it may turn out that the endorser has no residence or place of business there, and did not write nor authorize such designation, it will suffice to say that no party is bound to accept such an endorsement. He acts voluntarily in accepting the note or bill, and in giving faith to the endorsement. If he takes it, he necessarily assures himself (so far as he deems it necessary or prudent) of the genuineness of all the signatures on which he relies. And yet the signature of a supposed endorser may not be genuine ; the holder is at that risk.

So in reference to the authenticity of any qualification of the endorsement. He acts voluntarily and may rely upon it, or not, at his election, and ought to be bound by it.

I think the judgment should be affirmed.

All affirm, except MASON and MILLER, JJ.

MASON, J. (dissenting.)—The Plaintiffs bring an action against the Defendant as an endorser of a promissory note made by J. Bryant Smith, and the following is a copy of said note :

"$271$\frac{6 9}{1 0 0}$.                    New York, July 18, 1860.

" Three months after date, I promise to pay to the order of Charles Robinson, two hundred and seventy-one $\frac{6 9}{1 0 0}$ dollars, for value received, at the office of Collins & Bowne, 96 Broadway.

(Signed)             " J. Bryant Smith.

(Endorsed) " Charles Robinson, 214 E. 18th st."

The case was tried before a referee, who found the following facts : " That when the said note became due, it was presented for payment at the office of Collins & Bowne, in the city of New York, where the same was payable, and payment demanded, which was refused. That, on the 22d day of October, 1861, the Notary Public mailed a notice of protest of said note in the post-office in the city of New York, where the Defendant resided, directed to the said Defendant at the ' city of New York,' and prepaid the postage thereon. That the said notice never reached the Defendant, nor did he receive any notice of the protest of said note. That at the time the Defendant endorsed said note, he added below his name a memorandum of his residence, ' 214 E. 18th st.' That he then and ever since resided at No. 214 East 18th street, in said city of New York, as indicated and noted by him on said note."

And upon these facts the referee found that the said note was not properly protested, so as to charge the Defendant as endorser. That the mailing of the said notice of protest to the Defendant, addressed " Charles Robinson, Esq., city of New York," was not sufficient, and he gave judgment for the Defendant, and on appeal to the General Term, the judgment was affirmed ; and the Plaintiffs have appealed to this Court.

The law was settled, prior to the passage of the act of April 14, 1857 (chap. 416, Laws of 1857), that when the endorser resides at the place of the presentment and dishonor of the note, the notice must be served on him personally, or, what was deemed equivalent, must be left at his dwelling or place of business, if he had one there (Ireland *v.* Kip, 10 J. R. 490 ; Smedes *v.* Bank of Utica, 20 J. R. 372 ; Ransom *v.* Mack, 2 Hill's R. 587 ; Van Vechten *v.* Pruyn, 3 Kern. R. 549). This is the language of all the cases, and it is proper to remark that, originally, service through the post was not allowed in any case (Ransom *v.* Mack, 2 Hill's R. 587 ; 3 Kern. R. 551). The act of April 14, 1857, provides that when the residence of the endorser of a promissory note shall be in the city or town where such promissory note, &c., is payable, or legally presented for payment, all notices of non-payment of such promissory note may be served by depositing the

same, with the postage thereon prepaid, in the post-office of the city or town where such promissory note, &c., was payable, or legally presented *for payment, directed to the endorser at such city or town.*

The Notary, in this case, certainly complied with the strict language of this statute in mailing this notice of protest through the post-office to the Defendant, directed to him at the city of New York.

The very letter of the statute was complied with.

There is no ambiguity in the language employed to express the legislative intent in the statute; and where an act of the Legislature is worded in clear and precise terms—when the sense is manifest, and leads to nothing absurd—there can be no reason to refuse the sense it naturally presents. To go elsewhere in search of conjectures, in order to restrain or extinguish it, is to endeavor to elude it. If this dangerous method be once admitted there will be no act which it will not render useless (Vattel, book 2, chap. 17, § 263; Jackson v. Lewis, 17 J. R. 477; Smith on the Construction of Statutes, p. 627, § 478). Puffendorf says, that " if *the words of the law express clearly the sense and intention, we must hold to that.*" This is but the affirmance of the general rule laid down by Vattel, as a maxim of interpretation, that it is not allowable to interpret what has no need of interpretation.

The duty of Courts is, when the language is clear and explicit, to follow it and give it its full effect. In such cases the words of the statute are deemed to be the body and soul of the statute, and the letter and spirit are considered as united.

A statute is the declared will of the legislative power of the State. If its language is plain and unambiguous, there is no room for construction.

The language of this statute is clear and perspicuous. It says, in plain words, that this notice of protest may be served by depositing it in the post-office of the city or town, directed to the endorser at such city or town, with the postage thereon prepaid. We are asked to impose a further condition as reasonable and just to secure the interest and protect the rights of the endorser,

to wit, to require it to be addressed to the endorser at the number and street of his residence.

This, it is claimed, must be done where his number and street appear by memorandum under his name. The Court below so held, but not, if I appreciate the reasoning of the Court, upon the language or requirement of the statute, but upon the ground that where such a memorandum is made by the endorser, there is an implied contract that such notice of dishonor shall be sent to him at such particular place.

This is wholly unsound. There can be no implied contract in such a case to give any other notice of the dishonor of the note than such as the law requires to be given, and when the statute says that such notice may be served by sending the same through the post-office, with such a general direction, Courts have no right to impose further terms because they think the statute terms unreasonable.

It is our duty to administer the law as it is, and all complaints against the wisdom of the statute would be more properly made to the Legislature, where the evil complained of can be redressed. The service is complete by a mere deposit in the post-office, properly directed, whether it ever reaches the endorser or not. He takes the risk of the mail.

If I am right in the views above expressed, it follows that the judgment of the General Term, and of the referee, must be reversed, and a new trial granted.

MILLER, J., concurred in the opinion of MASON, J.

Affirmed.

JOEL TIFFANY,
State Reporter.
