## KREITLEIN *v.* FERGER.

ERROR TO THE APPELLATE COURT OF THE STATE OF INDIANA.

No. 157. Submitted January 22, 1915.—Decided June 1, 1915.

Under § 21 of the Bankruptcy Act of 1898, a certified copy of the order
of discharge is evidence of the jurisdiction of the court making it, the
regularity of the proceedings and of the fact that the order was made.

While the introduction of the order in discharge may make out a *prima
facie* defense that case may be disproved by introduction by the
defendant of the bankruptcy record, if the latter shows that the debt
scheduled was not the same as the one sued on, was not a provable
debt, was not properly scheduled, or that notice was not properly
given to the creditor.

A judgment may be a provable debt even if rendered in a suit where
the creditor elected to bring an action in trover as for a fraudulent
conversion instead of assumpsit for a balance due on open account.

It is not a fatal defect because the schedule shows the debt as a balance
on open account for merchandise instead of a judgment into which
the liability for the merchandise had been merged, or because there
may have been a difference between the amount of the original debt
as scheduled and the amount of the judgment. In such a case the
burden is on the creditor to show that the judgment was not the
identical claim scheduled.

The Bankruptcy Act failing to prescribe the form of designation to be

used in listing creditors in the schedule, the use of an initial instead of the use of a full Christian name is not a fatal mistake.

While failure to comply with the statutory requirements to file a list of creditors showing their residence, if known, will render the discharge inoperative against those not receiving actual notice in time to have their claims allowed, *quære*, where the burden under § 17 (3) lies as to proving sufficiency or insufficiency of notice.

·Bearing in mind that the Bankruptcy Act does not expressly require the use of initials and addresses, and that its general purpose is to relieve honest bankrupts, *held* in this case, that as no rules have been made as to addresses in the district in which Indianapolis is located, a schedule listing a creditor's residence simply as Indianapolis is *prima facie* sufficient.

THE facts, which involve the effect of a discharge in bankruptcy, the obligation of the bankrupt to schedule the debts of the creditor, and sufficiency of notice to the creditor, are stated in the opinion.

*Mr. John B. Elam, Mr. James W. Fesler* and *Mr. Harvey J. Elam* for plaintiff in error:

The Appellate Court denied plaintiff in error rights under the Federal bankruptcy law, and should have ordered a new trial on the ground that the evidence introduced by the defendant made a perfect defense to the action and that the evidence was not sufficient to support the finding and that the finding was contrary to law, because,

The evidence of the discharge in bankruptcy proved a complete defense to the debt proved by the plaintiff without any further evidence because,.

Under the Indiana rules of practice, where the evidence is in the record and there is no contradiction in it, the Appellate Court will weigh it even in the interest of the appellant and in its discussion in this case the Appellate Court seems to accept this rule. *First National Bank* v. *Farmers Bank*, 171 Indiana, 323; *Riley* v. *Boyer*, 76 Indiana, 152.

A certified copy of an order granting a discharge should be evidence of the jurisdiction of the court, the regularity of the proceedings and of the fact that the order was made. Bankruptcy Act, § 21f; *Hays* v. *Ford*, 55 Indiana, 52; *Begein* v. *Brehm*, 123 Indiana, 160; *Hancock Bank &c.* v. *Farnum*, 176 U. S. 640, 645.

The debt established by the plaintiff in this case was a provable debt. Bankruptcy Act, § 63, a (1).

A discharge in bankruptcy releases the debtor from all provable debts when there is no evidence before the court that the debt belongs to any of the excepted classes. Bankruptcy Act, § 17.

If the plaintiff claimed his debt was within any of the exceptions to § 17, the burden was on him to prove it. *Goddin* v. *Neal*, 99 Indiana, 334; *Thompkins* v. *Williams*, 137 App. Div. 521, aff'd 206 N. Y. 744; *Anthony* v. *Sturdevant*, 56 So. Rep. 571; *Hallagan* v. *Dowell*, 139 N. W. Rep. 883; *Grocery Co.* v. *Teasley*, 53 So. Rep. 815; *Alling* v. *Stratka*, 118 Ill. App. 184; *Lafoon* v. *Kerner*, 138 N. Car. 281; *Van Norman* v. *Young*, 228 Illinois, 425, 430; *Bailey* v. *Gleason*, 76 Vermont, 115; *New York &c.* v. *Crockett*, 102 N. Y. Supp. 412; *In re Peterson*, 118 N. Y. Supp. 1077; *Gatliff* v. *Mackey*, 104 S. W. Rep. 379; 1 Stephen on Pleading, p. 120; Works' Indiana Pr. & Pl., § 365; *Sherwood* v. *Mitchell*, 4 Denio, 435; *Imhoff* v. *Whittle*, 81 S. W. Rep. 814.

*Sorden* v. *Gatewood*, 1 Indiana, 107; *Imhoff* v. *Whittle*, 82 S. W. Rep. 1056, are not persuasive authority.

The fact that the creditor did not have actual knowledge of the bankruptcy does not keep the discharge from being effective. *Wiley* v. *Pavey*, 61 Indiana, 457; Bankruptcy Act, §§ 17, 58; *Beck* v. *Crum*, 127 Georgia, 94.

The evidence introduced by the defendant in addition to the discharge in bankruptcy was sufficient in the absence of contradiction to prove that the plaintiff's debt was not within any of the class of debts excepted from the operation of the discharge, because:

The mere fact that the original judgment was given without exemption does not show that it is within any of the excepted classes. *Crawford* v. *Burke,* 195 U. S. 176.

Plaintiff's debt was properly scheduled, because the description of the debt given in the schedule, so far as it goes, is a description of the plaintiff's debt. *Matteson* v. *Dewar,* 146 Ill. App. 523.

The evidence, so far as introduced, showed that the debt was properly scheduled as to name. *Bridges* v. *Layman,* 31 Indiana, 384; *Matteson* v. *Dewar,* 146 Ill. App. 523; *Finnell* v. *Armoura,* 117 Pac. Rep. 49; *Gatliff* v. *Mackey,* 31 Ky. L. R. 947; *Longfield* v. *Minnesota &c.,* 103 N. W. Rep. 706.

*Bascom* v. *Turner,* 5 Ind. App. 229; *Schearer* v. *Peale,* 9 Ind. App. 282; 1 Burns' Rev. Stat. 1914, § 343, holding that an initial is not a name are cases founded on an Indiana statute dealing with the subject of pleading and not in point here and have no application in construing the Federal statute which cannot be affected by any Indiana statute.

So also as to *Louden* v. *Walpole,* 1 Indiana, 319.

The debt was duly scheduled with the residence of the creditor and it was not necessary to give any street address. *Miller* v. *Guasti,* 226 U. S. 170; *Guasti* v. *Miller,* 203 N. Y. 259; *Finnell* v. *Armoura,* 117 Pac. Rep. 49; *North Commercial Co.* v. *Hartke,* 110 Minnesota, 338; *Gatliff* v. *Mackey,* 31 Ky. L. R. 947.

No appearance for defendant in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

In 1897 Ferger brought suit against Kreitlein in an Indiana court. The pleadings in that case are not set out in the record and the nature of the suit does not appear except as it may be inferred from the special findings

of the jury, copied in this record, which show that 'when Kreitlein purchased the flour in November, 1895, he was insolvent. He made no false representations as to his financial condition . . . the plaintiff understood that the sale was for cash.' These answers, and the fact that the judgment was for "$300 damages" indicate that that suit was in the nature of an action of trover for the recovery of flour. This judgment rendered November 23, 1897, was not paid; and in 1907, ten years later, Ferger brought the present suit against Kreitlein on that judgment, alleging that it "was not for any debt growing out of or founded upon a contract express or implied." The defendant filed a plea that in 1905 he had received his discharge in bankruptcy.

At the trial the plaintiff introduced the judgment of 1897; testified that it had not been paid, and that 'until lately he did not know that Kreitlein had gone through bankruptcy, having had no notice of it.' The defendant then introduced a certified copy of his discharge, dated November 11, 1905. He also offered a copy of the record in the bankruptcy proceedings, including the "Schedule of Creditors," in which appeared an entry showing a debt in 1895 of $271.85, for merchandise, to C. Ferger, Indianapolis.

The plaintiff objected to the admission of this record "for the reason that the testimony shows that he [Ferger] has not had any notice of this bankruptcy proceeding . . . and for the further reason that this is an action on a judgment. The schedule shows that it is on an account. The records show that this was reduced to a judgment in 1897 and this schedule was not filed until 1905." The objection was overruled and the record admitted. No further evidence was offered and thereupon the court entered judgment for the plaintiff. That judgment having been affirmed by the Appellate Court of Indiana, the case was brought here by Kreitlein who in-

sists that by the Federal law he was relieved from liability on the pre-existing judgment.

1. Under the provisions of § 30 of the Bankruptcy Act this court has prescribed the form [59] of the "Order of Discharge" which, among other things, contains a recital that the bankrupt has been discharged from all provable debts existing at the date of the filing of the petition, "excepting such as are by law excepted from the operation of a discharge in bankruptcy." Section 21f further declares that a certified copy of such order "shall be evidence of the jurisdiction of the court, the regularity of the proceedings, and of the fact that the order was made." This provision of § 21f was made in contemplation of the fact that the Bankrupt might thereafter be sued on debts existing at the date of the filing of the petition in bankruptcy; and was intended to relieve him of the necessity of introducing a copy of the entire proceedings so that he might obtain the benefit of his discharge by the mere production of a certified copy of the order.

There are only a few cases dealing with the subject but they almost uniformly hold that where the bankrupt is sued on a debt existing at the time of filing the petition, the introduction of the order makes out a *prima facie* defense, the burden being then cast upon the plaintiff to show that, because of the nature of the claim, failure to give notice or other statutory reason, the debt sued on was by law excepted from the operation of the discharge. *Roden Co.* v. *Leslie*, 169 Alabama, 579; *Tompkins* v. *Williams*, 206 N. Y. 744, affirming the opinion in 137 App. Div. 521; *Van Norman* v. *Young*, 228 Illinois, 425; *Beck* v. *Crum*, 127 Georgia, 94; *Laffoon* v. *Kerner*, 138 N. Car. 281. Compare *Hancock* v. *Farnum*, 176 U. S. 645. There were some decisions to the contrary under the Act of 1841. Among them was *Sorden* v. *Gatewood*, 1 Indiana, 107, which held that when the bankrupt was sued on a valid claim he was obliged to show that the plaintiff's debt was

among those which had in law and in fact been discharged. It was probably because of this decision of the state court that the defendant Kreitlein felt compelled to offer the schedule in order to show that Ferger was one of the creditors listed in the bankruptcy proceedings. The issue now is whether the *prima facie* defense made out by the production of the certified copy of the Order was disproved by the introduction of the bankruptcy record. That question can best be answered by considering the various reasons the defendant in error advances in support of his contention that the discharge of 1905 did not operate to relieve Kreitlein from the debt now represented by the judgment of 1897.

2. On the part of Ferger it is said that this suit is on a judgment for $300 rendered in an action not "founded upon a contract express or implied"—and it seems to have been claimed that the judgment was not a provable debt within the meaning of § 63 (a. 4), of the Bankruptcy Act. But the special finding of the jury in that case showed that in purchasing the flour Kreitlein had not made any fraudulent concealment or misrepresentation as to his financial condition. Besides the judgment was a provable debt even though rendered in a suit where the creditor had elected to bring an action in trover, as for a fraudulent conversion, instead of *assumpsit* for a balance due on open account. *Crawford* v. *Burke*, 195 U. S. 176, 193.

3. Ferger next insists that there is a want of identity between the debt sued on and that said to have been discharged. This contention is based upon the fact that the schedule lists an 'account for merchandise for $271 in 1895 in favor of C. Ferger,' while the present suit is on a 'judgment for $300 damages rendered in favor of Charles Ferger in 1897.' The difference between the two amounts is probably explained by the fact that there had been an accrual of two years' interest before the judgment was rendered. Besides the books of the debtor and of the

creditor may not have exactly agreed and in the absence of fraud and injury such discrepancy would not invalidate the schedule or vitiate the effect of the discharge. Nor would the bankrupt be deprived of the benefit of the order because the debt was described as an 'account for merchandise' rather than as a judgment into which the liability for the flour had been merged. See *Matteson* v. *Dewar*, 146 Ill. App. 523, where it was held not to be a fatal defect for the Bankrupt to schedule the debt as an "account" even though a note had been given in settlement.

The *prima facie* effect of the order, to relieve the bankrupt from liability on all debts prior to 1905, was not defeated because there *may* have been a difference between the account and the judgment. The burden of showing that there was such difference was upon the creditor and in this case there was not only no evidence tending to sustain such a contention, but the two claims seem to have been treated as identical in the trial court, for there the objection to the admission of the Schedule was based on the contention that it referred to an account "which had been reduced to a judgment in 1897."

4. Another question—and the one on which the Appellate Court based its decision,—was whether the Schedule, listing the creditor as C. Ferger, Indianapolis—using an initial and omitting the street number of his residence—met the requirements of § 7 (8), making it "the duty of bankrupts to prepare, make oath to, and file . . . a list of his creditors showing their residences if known, if unknown that fact to be stated."

While this only involves a determination of what is a sufficient designation of a person's name and residence, yet it is one of those apparently simple questions which has been the occasion of an immense amount of controversy. The difficulty grows out of the impossibility of applying a general and uniform rule where there are so many varying

methods by which men's names and residences are designated. Some men have a well-known and constantly used Christian name; others are addressed by an abbreviation for the Christian name; others by initials for the Christian name; others are known by nickname. Some men use one name in business and another among their acquaintances. Some men, while personally addressed by their full Christian name, use initials in signing letters, notes, checks and other papers.

The Bankruptcy Act fails to prescribe which form of designation shall be used in listing creditors in the schedule. The statute must be construed in the light of the fact that it not only applies to transactions growing out of dealings between those personally acquainted, but, in large degree, relates to matters growing out of transactions between persons living in distant States and who may never have met. In many instances the only knowledge the debtor has as to the name of his creditor is derived from signatures, letterheads, drafts and like instruments—in which the name of the creditor may be designated by initials, or by abbreviation, or by a full Christian name. To say that the use of an initial in listing a creditor was improper when the creditor himself may have used an initial in signing letters addressed to the Bankrupt—or may himself have constantly received letters addressed to him in that manner—would not only ignore a common business practice, but would, in many instances, work a great hardship. This has been recognized in other branches of the law. For, while, of course, in all legal proceedings it is safest to designate persons by their Christian names,—and in some States this is even required by statute,—yet it has likewise been held that the use of the initial is an irregularity and not a fatal defect. *Queen* v. *Dale,* 17 Ad. & Ell. 64; *State* v. *Webster,* 30 Arkansas, 166; *Perkins* v. *McDowell,* 3 Wyoming, 203; *Minor* v. *State,* 63 Georgia, 320; *State* v. *Johnson,* 93 Missouri, 73.

There have, no doubt, been multitudes of instances in which initials have been used in listing creditors in Bankrupt schedules, but the only decision found which deals with this question is *Gatliff* v. *Mackey,* 104 S. W. Rep. 379 (Kentucky). It holds that the listing of the creditor by an initial, instead of the full Christian name, is not sufficient to deprive the debtor of the benefit of the order discharging provable debts. See also *Matteson* v. *Dewar,* 146 Ill. App. 523.

5. Of a like nature, and to be governed by the same principle, is the contention that, even if C. Ferger is a sufficient listing of the name, the schedule was fatally defective because it failed to give the street and number of his residence in Indianapolis. This objection is more difficult of solution than any of the others presented by this record. But, like them, it must be considered in the light of the fact that the statute was intended for business men and should receive not only a practical but a uniform construction. Its provisions are applicable to creditors who live in the country, in villages, in towns and cities. The statute is general in its terms and the courts cannot add to its requirements.

All of the cases dealing with the subject recognize the necessity of having claims properly listed, and point out that failure to comply with the statutory requirement to file a list of his creditors, showing their residence if known, will render the discharge inoperative against any who did not receive actual notice of the bankruptcy proceeding in time to have their claims allowed. *Columbia Bank* v. *Birkett,* 195 U. S. 345; *Troy* v. *Rudnick,* 198 Massachusetts, 567. The authorities, however, differ as to whether under § 17 (3) the burden is on the plaintiff to show that he had no notice, or on the bankrupt to show that the creditor had notice in time to have proved his claim and had it allowed. *Steele* v. *Thalheimer,* 74 Arkansas, 518; *Van Norman* v. *Young,* 228 Illinois, 430; *Alling* v. *Straka,*

118 Ill. App. 184 (2); *Hallagan* v. *Dowell,* 139 N. W. Rep. 883 (Iowa); *Parker* v. *Murphy,* 215 Massachusetts, 72; *Wineman* v. *Fisher,* 135 Michigan, 608; *Laffoon* v. *Kerner,* 138 N. Car. 285; *Fields* v. *Rust,* 36 Tex. Civ. App. 351; *Bailey* v. *Gleason,* 76 Vermont, 117, 118; *Custard* v. *Wigderson,* 130 Wisconsin, 414. In view of the scope of his testimony that he did not know of the Bankruptcy it is not necessary in this case to discuss that mooted point, unless it must be held that, because of the failure to set out the number of Ferger's house in Indianapolis, his claim was not duly scheduled.

The question as to the necessity of giving the street address has sometimes arisen in suits against endorsers, who claimed that they were relieved from liability because the notice of non-payment and protest was addressed to them at the city where they lived, but without adding the street and number of his residence. It seems generally to have been held that mailing a notice thus addressed is *prima facie* sufficient. *True* v. *Collins,* 3 Allen, 438; *Clark* v. *Sharp,* 3 M. & W. 166; *Mann* v. *Moors,* Ryan & M. 250; *Peoples Bank* v. *Scalzo,* 127 Missouri, 188; *Morton* v. *Westcott,* 8 Cush. 425; *Bartlett* v. *Robinson,* 39 N. Y. 187. See also *Bank of Columbia* v. *Lawrence,* 1 Pet. 578, 581; *Bank of United States* v. *Carneal,* 2 Pet. 550, 551. There are only a few instances, under the Bankrupt Act, in which the courts have had occasion to deal with the subject, or to construe § 7 (8),—requiring claims to be duly listed—, in connection with § 17, which provides that a discharge shall release the debtor from all provable debts "except such as . . . (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy. . . ." It has been held that a claim is not duly scheduled if the name of the creditor is improperly spelled (*Custard* v. *Wigderson,* 130

Wisconsin, 414); or if the street number is given but the name of the city of his residence is omitted (*Troy* v. *Rudnick*, 198 Massachusetts, 563); or if the creditor is listed as residing in one city when he actually lives in another (*Marshall* v. *English Co.*, 127 Georgia, 376): or if the creditor's name is given but the schedule falsely recites "Residence unknown" (*Birkett* v. *Columbia Bank*, 195 U. S. 345; *Miller* v. *Guasti*, 226 U. S. 170; *Parker* v. *Murphy*, 215 Massachusetts, 72). These decisions, however, were based on extrinsic proof and on a finding that, as a matter of fact, the name was misspelled, or the creditor's residence was improperly listed, or that the bankrupt knew the creditor's address and falsely stated that the residence was "Unknown." None of them holds that, as a matter of law, the discharge was rendered inoperative merely because the street number was not given in the schedule.

6. Indeed, it is not claimed that the Act requires that this street address should be stated in every instance where the creditor lives in a city having a Postal Delivery System. *Evans* v. *Fleuring*, 62 Kansas, 813. But, it is argued, that this should be done where he resides in one of the very large cities of the country. And we find that in some Districts the Referee examines the schedule and, in his discretion, requires it to be amended so as to give the street number (*In re Brumelkamp*, 95 Fed. Rep. 814; *In re Dvorak*, 107 Fed. Rep. 76). We also find that the Bankruptcy Rules of force in the Southern District of New York provide (italics ours) that the schedules "as respects creditors *in the city of New York*, should state the street and number of their residence, or place of business so far as known." *Widenfeld* v. *Tillinghast*, 54 Misc. N. Y. 93. See also *Cagliostro* v. *Indelle*, 17 A. B. R. 685; *McKee* v. *Preble*, 138 N. Y. Supp. 915.

But without considering the effect of such Rule, it is sufficient to say that, in the present case, there was nothing to show that any similar regulation had been made in the

Indiana District, nor is there proof as to what was Ferger's street address; or that Kreitlein knew such address at the time he made the schedule; or that the notice may not have been delivered during Ferger's absence from the city and not received by him on his return. Nor is there any evidence to show that Ferger did not constantly and promptly receive letters addressed to him at Indianapolis without the street number being given.

7. It is said that Kreitlein might have examined the Directory, but the suggestion presupposes that at the time of making the schedule the bankrupt had access to a directory and overlooks the fact that even if the address given therein was correct when made, the creditor may have moved before the book was issued so that if notice was mailed to an incorrect street address the creditor might contend that such specific address was not required by statute and that the burden of the mistake was cast on the bankrupt. We are here dealing with a general rule applicable to cases where the parties reside in different parts of the country as well as to instances where they lived in the same city. The rule is the same as to both. There certainly is no presumption that bankrupts have access to directories containing the street addresses of their creditors throughout the land; and, if the fact was essential, the question as to whether the bankrupt had access to a directory, or whether it was correct, were matters of proof, none of which was made in the present case.

8. Both as to the use of initials and omission of street address the Act must be given a general construction and in the light of the fact that letters directed to persons by their initials are constantly, properly and promptly delivered in the greatest cities of the country even when the street number is not given. When it is considered that the schedule must not only include claims of recent origin but debts which have accrued many years before and where the creditor may have changed his residence,

it becomes evident that to lay down the general rule that the schedule must give the name of the creditor and the city and street number of the residence of those living in the largest cities would, in a multitude of cases, destroy the beneficent effect of the Bankruptcy Act.

These schedules are often hurriedly prepared, long after the date of the transaction out of which the debt grew, and when books and papers, which might otherwise have furnished a fuller and more complete address, have been lost or destroyed. Bearing in mind the general purpose of the statute to relieve honest bankrupts; considering that the Act does not expressly require the street address to be stated or the residence to be given unless known; and giving proper legal effect to the Order of Discharge, we hold that a schedule listing the creditor's residence as Indianapolis is, at least, *prima facie* sufficient. In view of this conclusion the judgment of the Appellate Court of Indiana is reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed.*


Mr. Justice Day, with whom concurred Mr. Justice McKenna, dissenting.


I am unable to agree with the conclusion just announced. It seems to me to establish a rule by which many creditors will find their debts paid by a discharge in bankruptcy when they have had no knowledge or means of knowing that such proceedings were pending, and are not able to participate in such dividends as are paid to creditors.

It is admitted in this record that Ferger, the creditor, had a provable claim against Kreitlein in the bankruptcy proceeding. After the institution of this suit, the defendant Kreitlein pleaded his discharge in bankruptcy, and the state court refused to permit it to avail as a defense, because it did not appear that Ferger's debt was properly

scheduled, or that he had been given the notice which
the Bankruptcy Act declares shall be given to creditors
of the pendency of the proceedings. The fact that Ferger
had no notice of the proceedings is not contested. In
that situation, under the Act of 1898, in order to bar the
claim sued upon, it was essential for the bankrupt to show
that he had complied with the act, in so far as he could, by
giving or attempting to give Ferger notice of the pendency
of the proceedings.

Under the Bankruptcy Act of 1867, creditors who had
provable claims were barred by the bankrupt's discharge,
although such creditors' names were omitted from the
schedules or so incorrectly given that they had no actual
notice of the bankruptcy proceedings, unless the omission
or incorrect statement was fraudulent or intentional.
(See the cases under the former act, collected in Black on
Bankruptcy, § 727.)

As this court pointed out in *Birkett* v. *Columbia Bank,*
195 U. S. 345, the Act of 1898 devolved upon the bank-
rupt certain duties, "all directed to the purpose of a full
and unreserved exposition of his affairs, property and
creditors." Under § 7, he is required to prepare, make
oath to, and file in the court, within ten days, a schedule
of his property containing, among other things, "a list
of his creditors, showing their residences, if known, if
unknown, that fact to be stated, the amounts due each
of them, the consideration thereof, the security held by
them, if any, and a claim for such exemptions as he may be
entitled to." These schedules were to be in triplicate, one
copy of each for the clerk, one for the referee, and one for
the trustee. "To the neglect of this duty," this court
declared in the *Birkett Case,* "the law attaches a punitive
consequence," which is set forth in § 17, and provides
that "a discharge in bankruptcy shall release a bankrupt
of all of his provable debts, except such as  .  .  .  have
not been duly scheduled in time for proof and allowance,

with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy. . . ." It follows from this decision that, if a discharge is to have the effect to cancel the debt of a creditor who had no notice of the proceedings, the burden is upon the bankrupt to show a compliance with the Act. The provisions of the Act (§ 21f) making the certified copy of the discharge evidence of the jurisdiction of the court, the regularity of the proceedings and the fact that the order was made, should be read in connection with the provisions of § 17, excepting from the benefit of a discharge claims which the bankrupt has failed to duly schedule.

To this effect are a number of well considered cases in the state courts. In *Columbia Bank* v. *Birkett*, 174 N. Y. 112 (affirmed in 195 U. S. 345) the court, speaking through Judge Gray, said: "While there may be some difficulty in the way of the statutory construction, I think the plaintiff's claim has never been discharged, as the result of the bankruptcy proceedings. In my opinion, there are features in the present Bankruptcy Act which differentiate it from preceding acts and which indicate a legislative intent that greater strictness shall prevail in notifying the creditor of the various proceedings in bankruptcy. It is provided that the voluntary bankrupt must file 'a list of his creditors, showing their residences, if known,' and that notices must be sent to the creditors at 'their respective addresses as they appear in the list of creditors of the bankrupt, or as afterwards filed . . . by the creditors.' While in the previous act of 1841 and 1867, substituted service of notices by publication was provided for, in the present act it is actual notice that is required to be given. The schedule of debts, which the bankrupt is to file with his petition, furnishes the basis for the notices which the referee, or the court, is to give thereafter to the creditors, and thus the bankrupt appears

to be made responsible for the correctness of the list of his creditors. That he is to suffer, in the case of his failure to state the name of the creditor, to whom his debt is due, if known to him, seems to me very clear from the reading of Section 17 of the Act. That excepts from the release of the discharge all debts which 'have not been duly scheduled in time for proof and allowance, with the name of the creditor.' That is very emphatic language, and how is it possible to obviate its effect by the argument that the plaintiff still had time left, after the discharge was granted, to prove his claim? . . . I think it was intended that the decree discharging the voluntary bankrupt should be confined in its operations to the creditors who had been duly listed and who were enabled to receive the notices which the act provides for."

In *Parker* v. *Murphy*, 215 Massachusetts, 72, this question was discussed, and the court said:

"Section 17 of the bankruptcy act provides that a discharge in bankruptcy shall release the debtor from all provable debts 'except such as . . . have not been duly scheduled' . . . unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." Claims are not duly scheduled unless the names of the debtor's 'creditors showing their residences, if known,' are on the list of creditors filed. Section 7, cl. 8. The burden of proving that he did all things required of him under the bankruptcy law to give notice to the respondent creditor of the bankruptcy proceedings or that the latter had actual knowledge of them rests upon the plaintiff [the bankrupt] in this case. *Wylie* v. *Marinofsky*, 201 Massachusetts, 583; *Wineman* v. *Fisher*, 135 Michigan, 604, 608.

"The requirement for duly scheduling the names and residences of creditors is a most important one. It is in compliance with the generally recognized principle that one shall not be barred of his claim without the oppor-

tunity of having his day in court. It is for the benefit of
the creditors and in the interest of fair dealing with them
and is to be construed in harmony with this purpose.
It is essential in order that notices in the bankruptcy
proceeding may be sent him. It has been construed with
some strictness. *Birkett* v. *Columbia Bank*, 195 U. S. 345;
*Custard* v. *Wigderson*, 130 Wisconsin, 412."

In *Custard* v. *Wigderson*, 130 Wisconsin, 412, the court
said: "Under the bankruptcy law of 1867 this court held,
in harmony with the general current of authority, that a
debt is discharged even though not scheduled. . . .
But it will be seen that under the act of 1867 debts not
scheduled were not excepted from the operation of dis-
charge, while under the bankruptcy act of 1898 they
are. . . . This provision is a marked departure from
former bankruptcy acts, and decisions, under such acts,
to the effect that scheduling was not necessary in order to
bring the debt within the order of discharge" are not
pertinent. "The words of the present act, however, are
plain and unambiguous, and there can be no doubt that
they mean what they say; and, if so, unless the debt is
duly scheduled in time for proof and allowance, or the
creditor had notice or actual knowledge of the proceedings
in bankruptcy, it is not affected by the discharge."

In *McKee* v. *Preble*, 138 N. Y. Supp. 915, the schedules
had given the address as 212, 9th. Avenue, New York,
which was the place of business. Plaintiff's residence was
elsewhere, with the correct address given in the city
directory, where the bankrupt might have discovered it
with a slight effort. The creditor swore he received no
notice. The discharge was held ineffective as against this
creditor.

In *Cagliostro* v. *Indelle*, 17 A. B. R. 685, the residence, as
stated in the schedules, was "Mulberry Street, New York
City." Creditor's residence, in fact, was 141 Mulberry
Street, where he had resided for fifteen years last past.

This fact appeared in the directory, and could have easily been discovered. It was held that the bankrupt did not use due effort to ascertain the address of the creditor, and the discharge did not affect this debt, the court saying: "I am satisfied that the petitioner, when he made up the schedules, failed to use due efforts to learn the street number of the judgment creditor, and that it was owing to such failure on his part that the judgment creditor received no notice. Such failure deprives him of the right to a discharge of such judgment. *Columbia Bank* v. *Birkett*, 174 N. Y. 112, 9 Am. B. R. 481; *Sutherland* v. *Lasher*, 41 Misc. 249, 11 Am. B. R. 780, affd.; 87 App. Div. 633. It may be that, in the absence of other evidence, there is a presumption that the postal authorities would deliver a letter to the plaintiff addressed, simply, 'Mulberry Street,' without any addition of the street number; but such presumption cannot prevail as against the positive statement of the plaintiff that he never received such notice."

It seems to me that the same rule in scheduling creditors cannot be applied to those who reside in large cities, where it may be essential in order that the creditor receive notice that street and number shall be given, as is applied to creditors residing in small communities where the postal authorities may be presumed to know the residence of the creditor by a more general form of address.

If it is sufficient to give the name of the city without more, the bankrupt, when making out his schedules which are to be the basis of informing creditors of the proceedings, may have before him the list of his creditors, and the street and number of their addresses, but being only required to give the name and residence of the creditor, he may omit to state the street and number, although known.

It is true that in view of the efficiency of the postal service such notices may reach the creditor, and may inform him of the proceedings with the consequent opportunity to prove his claim; but, because of the omission of

street and number the notice may fail to reach the creditor, and the estate may be administered and divided without his knowledge or any opportunity to participate in the distribution. It seems to me that the only consistent conclusion in view of the provisions of the present Bankruptcy Act, requires that the consequences of such negligence of the bankrupt be visited upon him and not upon the innocent creditor. If the notice reaches the creditor, well and good; but if not, the loss should fall upon him upon whom the law has placed the burden of complying with the requirement to duly schedule the debt of each creditor, so far as known.

It is a question of due diligence in every case, with the burden of showing such diligence upon the bankrupt, and there is nothing in this case to show that Kreitlein did not know of Ferger's address in Indianapolis, nor is there a showing of diligence on his part to discover what it actually was if in fact it was unknown. In view of their former dealings it is fair to presume that Ferger's address was known to Kreitlein.

Obviously, the same rule may not apply to all places and of course the schedules showing street and number are only to be complied with so far as practicable. "Thus, failure to look in the city directory of a great city, both creditor and bankrupt being residents, is not due scheduling." 3 Remington on Bankruptcy, p. 2504.

"By far the most important schedule is that of creditors. Its purpose is three-fold: (a) to give the court information as to the persons entitled to notice, (b) to inform the trustee as to the claims against the estate and the considerations on which they rest, and (c) to an extent at least, to limit the effect of the bankrupt's discharge to parties to the proceedings. It follows that the requirements of the statute . . . should be strictly observed. . . . The names of creditors should be written with care. . . . Even greater care should be

observed in addresses.  Schedules are defective if they do not contain the addresses of creditors, stating street and number, in case the creditors reside in large cities, or unless the schedules show that after diligent effort no better addresses can be obtained.  If the residence cannot be ascertained, that fact must be stated, and the proper practice requires that the bankrupt shall state what efforts he has made to ascertain the residence." Collier on Bankruptcy, 9th ed., p. 234.  To the same effect is 1 Loveland on Bankruptcy, 4th ed. 374.

It seems to me that in this case there is an utter lack of that diligence to ascertain and state the residence of the creditor which is required to give the discharge the effect of barring this claim.

Indianapolis is a large city.  The imperfectly addressed notice never reached Ferger.  Moreover Kreitlein had probable knowledge of Ferger's true address or might have obtained it by the exercise of due diligence.  In my opinion the judgment of the Indiana court should be affirmed.

MR. JUSTICE MCKENNA concurs in this dissent.