## In re OSOFSKY et al.

### No. 48597.

District Court, S. D. New York.

March 23, 1931.

Samuel Rosenzweig, of New York City, for petitioner Stewart Lumber Co.

David Haar, of New York City, for bankrupts.

PATTERSON, District Judge.

An ex parte order was obtained by Abe Osofsky, one of the bankrupts, on February 19, 1931, staying Stewart Lumber Company from taking further action on a judgment it had recovered against him in the Municipal Court of New York City until after a hearing of his application for discharge. Thereupon the judgment creditor moved to vacate the stay, on the ground that its claim was one which would not be affected by a discharge. The question is whether the claim on which the judgment was based was duly scheduled by the bankrupt.

On May 1, 1929, Abe Osofsky executed a series of promissory notes to the order of Mechanics Show Case & Fixture Company, Inc., in payment of goods sold and delivered. Several of these notes were transferred by the payee by proper indorsement to Stewart Lumber Company in October, 1929. The first fell due on January 2, 1930, and was duly protested for nonpayment. The notice of protest which was received by Osofsky showed that the note had been transferred to the lumber company and by the latter to a bank. This defaulted note was paid and taken up by the payee, the show case company. According to the president of this concern, he

told Osofsky shortly afterwards that his concern had been obliged to make the note good, and also that the lumber company held three other notes not yet matured.

The Osofskys were adjudicated bankrupts on April 21, 1930. The schedules filed by them did not list the lumber company as a creditor. They did contain, under Schedule A 4 of the partnership lists (which schedule bears the printed heading "Liabilities on Notes or Bills Discounted, Which Ought To Be Paid by the Drawers, Makers, Acceptors or Endorsers"), the following entry: "Mechanics Show Case Co., 51 Rockaway Avenue, Brooklyn, New York, $1,200." Thereafter in October and November, 1930, two of the notes held by the lumber company fell due and were not paid. The lumber company then commenced an action in the Municipal Court on the two notes against Osofsky as maker and the show case company as indorser, and obtained judgment for the full amount on December 27, 1930. When it attempted to realize on the judgment, it then learned for the first time, as it says, that Osofsky was in bankruptcy. At the same time Osofsky obtained an ex parte order restraining the judgment creditor from proceeding further to collect its judgment. If the debt is a dischargeable one, the ex parte order should stand. If not dischargeable, then the order should be vacated and the judgment creditor permitted to pursue his ordinary remedies on the judgment in the state courts.

Section 17 of the Bankruptcy Act (11 USCA § 35) excepts from debts barred by discharge those that "have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy."

▮▮▮ The bankrupt erroneously listed the notes in the partnership schedule instead of in his personal schedules. He made another error when he put the item in the schedule intended for debts on which the bankrupt was secondarily liable; the proper schedule was A–3. I will pass these mistakes as not serious enough to take the debt out of the dischargeable class (see Kreitlein v. Ferger, 238 U. S. 21, 35 S. Ct. 685, 59 L. Ed. 1184), and will consider only the fact that the bankrupt listed as his creditor the payee of the notes rather than the actual holder.

We have here the statement of the payee that two or three months prior to bankruptcy the bankrupt was told that these notes had been transferred to the lumber company. If this is the fact, it is clear that the debt represented by the two notes is not dischargeable. Columbia Bank v. Birkett, 174 N. Y. 112, 66 N. E. 652, 102 Am. St. Rep. 478, affirmed in 195 U. S. 345, 25 S. Ct. 38, 49 L. Ed. 231. The bankrupt, however, denies knowledge of any transfer. Even if this were true as to these two notes of late maturities, he was certainly cognizant of the transfer of the note of the same series which had fallen due prior to bankruptcy. And it would seem that this circumstance was sufficient to charge him with the duty of inquiry concerning the later notes. When he made up his schedules, he could readily have learned from the payee whether the notes had been passed on to others. Lansing Liquidation Corp. v. Heinze, 184 App. Div. 129, 171 N. Y. S. 738, is a far stronger case for the bankrupt. There the obligation was nonnegotiable and had been assigned by the creditor prior to bankruptcy of the debtor. The schedules set it forth as owing to the original creditor. It was held that the bankrupt's lack of knowledge of the assignment was immaterial, in the absence of a showing by him of due diligence to find out who was the owner of the obligation, and that the discharge in bankruptcy was not a defense. It may be questioned whether this is not too onerous on the bankrupt, especially in a case where the obligation is nonnegotiable. But in the present case the notes were negotiable. Transfer of such instruments is to be expected. The bankrupt maker knew that a companion note had been negotiated by the payee. Under such circumstances, he should have inquired of the payee whether the later notes had also been negotiated. The probability is that the payee told him in January what the situation was as to the later notes, and that he neglected to pass the information on to his lawyer three months later when the schedules were being drafted. I have concluded that the failure to list the lumber company in the schedules was due to the bankrupt's oversight.

▮▮▮ There is nothing here to indicate any notice or actual knowledge of the bankruptcy on the part of the lumber company. Its notes did not mature until six months after bankruptcy, and there was no reason for it to inquire about the financial condition of the maker before maturity. I think that it is in good faith in its statement that the news of the bankruptcy first reached it in February, 1931.

In a case of this sort, there is a clashing between the two purposes sought to be accomplished by the Bankruptcy Act, a discharge from debts of the honest debtor who is engulfed and an equitable distribution of his estate among his creditors. To hold that the bankrupt is not discharged is to defeat in part the former purpose. To hold that he is discharged is to deprive the creditor of his right to participate in the administration of the estate and in the proceeds. In this dilemma the law favors the bankrupt. It does not call upon him to run down all his obligations and name the present holders of them, at the risk of having his discharge held ineffective against them. Such a task would often be a formidable one. But this does not mean that the bankrupt may list the original creditor, when he knows, or ought to know, that another is the present holder of his obligation, and in my opinion that is this case. I therefore hold that the debt represented by the judgment was not duly scheduled and is not dischargeable, and that the stay should be vacated.