## ASHBAUGH v. BELANGER.
### No. 1788.

District Court, E. D. Michigan, S. D.
June 30, 1941.

402

C. Frederic Stanton, of Detroit, Mich., for plaintiff.

Julius J. Lechner, of Detroit, Mich., for defendant.

LEDERLE, District Judge.

### Findings of Fact.

1. Plaintiff is the duly appointed, qualified and acting receiver of the First National Bank at Pontiac, an insolvent national banking association, under appointment of the Comptroller of the Currency of the United States, and defendant, Irving J. Belanger, is a resident of this District. Plaintiff here is engaged in winding up the affairs of this bank, claiming judgment against defendant for his assessment liability as a stockholder of said bank.

2. The First National Bank at Pontiac closed its doors on February 11, 1933, and never again reopened for normal banking business. Thereafter, the Comptroller of the Currency duly found and declared said bank to be insolvent, and appointed a receiver therefor.

3. On March 12, 1934, the Comptroller of the Currency of the United States duly levied a 100% assessment against the stockholders of said bank, making same payable April 19, 1934, and subsequently extended the payment date to April 30, 1934.

4. The said bank was one of the members of the holding corporation, Detroit Bankers Company, a Michigan corporation, whose history and relation to member banks and stockholders is fully set forth in the First National Bank-Detroit stockholders' class or representative suit of Barbour v. Thomas, D.C., 7 F.Supp. 271, affirmed, 6 Cir., 86 F.2d 510, certiorari denied, 300 U. S. 670, 57 S.Ct. 513, 81 L.Ed. 877, in which it was determined that stockholders of Detroit Bankers Company were liable for the assessment levied by the Comptroller of the Currency against stockholders of a member bank of said holding company.

5. On March 29, 1933, said Detroit Bankers Company, being hopelessly insolvent due to the insolvency of banks and trust companies whose stock it held, filed a petition in the Circuit Court for the County of Wayne, Michigan, for the voluntary dissolution of said corporation pursuant to Michigan statute, and on May 10, 1933, a decree was entered by said Circuit Court declaring the insolvency of Detroit Bankers Company, dissolving the company, and appointing William F. Connolly as receiver for its assets.

6. At the time of the closing of said First National Bank at Pontiac, at the time of the levying of said assessment, and up to the present time, three hundred (300) shares of the capital stock of Detroit Bankers Company were and have remained registered in the name of defendant, Irving J. Belanger.

7. The part of Article IX–A of the Articles of Association of said Detroit Bankers Company which reads as follows was printed on the reverse side of the said certificates of Detroit Bankers Company stock held by defendant: "The holder of each share of common stock of this corporation shall be individually and severally liable for such stockholders ratable and proportionate part (determined on the basis of their respective stockholdings of the total issued and outstanding stock of this corporation) for any statutory liability imposed upon this corporation by reason of its ownership of shares of the capital stock of any bank or trust company, and the stockholders of this company, by the acceptance of their certificates of stock in this company, severally agree that such liability may be enforced in the same manner and to the same extent as statutory liability may now or hereafter be enforceable against stockholders of banks or trust companies under the laws under which said banks or trust companies are organized to operate."

8. Each share of Detroit Bankers Company stock represented ownership of

.00269788 shares of the capital stock of the First National Bank at Pontiac, making the holder of each share of said Detroit Bankers Company stock liable for an assessment of $.269788.

9. On November 12, 1934, said defendant was adjudicated a bankrupt by this court, in proceeding number 18189, and was discharged from his debts on February 25, 1935, which discharge he pleads in defense to this action.

10. Plaintiff was not listed as a creditor in defendant's bankruptcy schedules and had no notice or actual knowledge of said proceedings in bankruptcy in time for proof or allowance of his claim.

11. In said bankruptcy schedules the following creditors were listed by defendant:

"B. C. Schram, Rec'r for First National Bank-Detroit. Stock Assessment as declared and based upon 300 shares of Detroit Bankers stock."

"William F. Connolly, Rec'r for Detroit Bankers Company, a Michigan corporation, 845 National Bank Bldg., Detroit, Michigan, assessment of 300 shares of Detroit Bankers stock which petitioner held."

12. Notice of the levying of the assessment against stockholders of the First National Bank at Pontiac was mailed to all stockholders of record of Detroit Bankers Company, by plaintiff, on May 15, 1934, but defendant did not receive his letter of notification and disclaims knowledge of such assessment prior to this action.

13. Defendant's contentions are summarized in his brief as follows: "Defendant had been the owner of 300 shares of Detroit Bankers stock, and did not know that the Detroit Bankers Company was interested in the First National Bank at Pontiac, and had never received notice that the Receiver of said Pontiac Bank claimed an assessment had been levied against him; that in his bankruptcy schedules he listed William F. Connolly, Receiver of Detroit Bankers Company, a Michigan corporation, 845 National Bank Building, Detroit, Michigan, assessment on 300 shares of Detroit Bankers stock which plaintiff (sic, probably meaning defendant) held, and he also listed B. C. Schram, Receiver for the First National Bank, Detroit, stock assessment as declared and based upon 300 shares of Detroit Bankers stock, because he knew his Detroit Bankers Company stock was given to him for the bank stock originally owned by him. Plaintiff claims its assessment was made April 30, 1934, but defendant claims absolutely no knowledge or notice thereof. The bankrupt's estate was what is commonly known as a no asset estate."

Defendant further contends that because of the relationship between the First National Bank at Pontiac and Detroit Bankers holding company, the plaintiff-receiver must be deemed to have had notice or knowledge of defendant's bankruptcy by virtue of the scheduling of William F. Connolly, receiver of the Detroit Bankers Company, as a creditor of defendant.

14. When filing his petition in bankruptcy defendant scheduled, as creditors, by virtue of stock assessment on these shares, the receiver of Detroit Bankers Company and the receiver of First National Bank-Detroit, which bank had also closed its doors on February 11, 1933, had a receiver appointed, and an assessment against stockholders levied by the Comptroller. At that time defendant must have actually known that the holding company was insolvent and in the hands of a receiver, and that at least one of its member banks was closed and insolvent, in the hands of a receiver, with assessment levied and due to such bank-receiver from holders of holding company stock, but defendant made no effort to ascertain the status of other member banks and their receiverships, particularly plaintiff-bank and plaintiff-receiver, who were in the same position as First National Bank-Detroit.

15. No part of said assessment has been paid, and the amount due thereon is $80.94, plus interest at 5% per annum from date the assessment was due, April 30, 1934.

16. Plaintiff cited no authority in its brief, and defendant relied upon Cleveland v. Summerfield, 194 Ark. 727, 109 S.W.2d 438; Hill v. Smith, 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419, and Reaugh v. Hadley, 7 Cir., 93 F.2d 29.

### Conclusions of Law.

1. District Courts of the United States have jurisdiction of cases for winding up the affairs of national banking associations, which includes the instant case. 28 U.S.C.A. § 41(16); Dinan v. First Nat. Bank, 6 Cir., 117 F.2d 459.

2. A discharge in bankruptcy releases a bankrupt from all his provable debts except such as have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy. 11 U.S.C.A. § 35.

■ 3. Liabilities may be discharged in bankruptcy if claims thereon exist in favor of claimants whose identity is determinable at the date of filing petition in bankruptcy. Brown v. O'Keefe, 300 U.S. 598, 603, 57 S.Ct. 543, 81 L.Ed. 827.

■ 4. Upon levy of said stock assessment by the Comptroller of the Currency on March 12, 1934, the liability therefor of the stockholders to the plaintiff-receiver became fixed, constituting it a provable and dischargeable debt for which plaintiff was a creditor within the meaning of the Bankruptcy Act. Barbour v. Thomas, supra; Brown v. O'Keefe, supra; Rawlings v. Ray, 311 U.S. 627, 61 S.Ct. 45, 85 L.Ed. ——; Smith v. Bruhn, 54 S.D. 347, 223 N. W. 307, 62 A.L.R. 988; Brown·v. Ellis, D.C., 103 F. 834; Ranklin v. Miller, D.C., 207 F. 602.

■■ 5. To be discharged in bankruptcy from a debt a petitioning bankrupt must exercise due and reasonable diligence to ascertain and properly schedule his creditor, and defendant failed to exercise such diligence as to plaintiff-receiver and his assessment claim under the circumstances here involved. In re Osofsky, D.C., 50 F. 2d 241; In re Cleveland, D.C., 30 F.Supp. 868; Hill v. Smith, 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419; 8 C.J.S., Bankruptcy, § 577, pp. 1534–1536; 6 Am.Jur. 817, 818; Gilbert's Collier on Bankruptcy, 4th Ed., §§ 561–565.

·₀ 6. Judgment shall be entered in favor of plaintiff and against said defendant for the amount above specified, with costs to be taxed, for which execution may issue.