In re BAIRD.

(District Court, D. Delaware.   June 26, 1917.)

No. 291.

1. INSURANCE ⬡⟿207(1)—LIFE INSURANCE—POLICIES—ASSIGNMENT.

A provision in a life policy that no assignment should be of any force 'or effect, unless made in writing and recorded by the company in its books, is intended for the protection of the company in making payments of insurance, but. does not affect the force or validity, as against the insured, of any contract between the insured and a third person as to the ultimate receipt and enjoyment of the proceeds of the policy.

2. INSURANCE ⬡⟿208—LIFE POLICIES—PLEDGES.

A policy of life insurance may be validly pledged by delivery, either with or without a written transfer.

3. BANKRUPTCY ⬡⟿161(1)—ASSIGNMENTS—VALIDITY.

A bona fide assignment or pledge of life policies, executed by a bankrupt several years prior to the filing of a petition in bankruptcy, cannot be set aside, though he be adjudicated a bankrupt.

4. INSURANCE ⬡⟿211—LIFE POLICIES—ASSIGNMENT—EFFECT.

Life policies declared that no assignment should be of any force or effect, unless in writing and recorded by the company on its books. Insured, who was indebted to his wife and sister, executed similar instruments, assigning or purporting to assign one policy to his sister and another to his wife. The two instruments were similar, being entitled "Assignment, Conditional upon Death Prior to Maturity of Policy and the Survival of the Assignee," and reciting that for value received the insured transferred and set over to his sister (or his wife) all his right, title, and interest in a numbered policy, provided that the policy should become payable by reason of his death prior to the date when the endowment should have matured, and that the assignee should survive the insured. The insured expressly reserved the right to revoke the assignments at any time by filing with the company an instrument of revocation duly executed under his hand and seal. The assignments were filed with the company and recorded on its books, but were not delivered to the assignees. Some time thereafter the insured delivered to his sister the two policies; the sister executing a receipt, reciting the delivery of the two policies as security for his indebtedness to her, and also as trustee for his wife. Held that, though the receipt recited that the sister and the wife were beneficiaries of the policies, and though the assignments were invalid as against the insurance company, nevertheless, between the insured and his wife and sister, there was a valid pledge of the policies as collateral security.

5. EVIDENCE ⬡⟿397(3)—PAROL EVIDENCE RULE—ADMISSIBILITY.

In such case, as the assignments were intended only to operate in case of the insured's death before maturity of the policies, and in event that the assignee survived him, parol evidence as to the giving of the pledge was admissible, not being offered to contradict or vary any written contract.

6. BANKRUPTCY ⬡⟿250(1)—PROCEEDINGS—DUTY OF TRUSTEE.

As Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (Comp. St. 1916, § 9654), declares that, when any bankrupt shall have any insurance policy, which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within 30 days after the value has been ascertained, pay to the trustee the sums so ascertained, and continue to hold and carry such policy free from the claims of creditors, but otherwise the policy shall pass to the trustee as assets, it is the duty of the trustee in such case, on delivery of the policies, to receive from the

⬡⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bankrupt or collect from the insurance company the surrender value of the policies, which were payable to the bankrupt or his estate; the pledgees being unable to collect the same, but the pledge being valid as between the bankrupt and themselves.

In Bankruptcy. In the matter of the bankruptcy of Robert S. Baird. Petition by Grace Baird and the Wilmington Trust Company, trustee in lunacy of Mary H. Baird, to review orders of referee. Orders set aside.

Herbert H. Ward, of Wilmington, Del., for claimants.

William S. Hilles, of Wilmington, Del., for excepting creditors.

BRADFORD, District Judge. Grace Baird and the Wilmington Trust Company, trustee in lunacy of Mary H. Baird, have petitioned for the review of certain orders of the referee in the matter of Robert S. Baird, bankrupt. The petitioner Grace Baird made and filed November 11, 1915, a proof of claim against the estate of the bankrupt in the sum of $31,500. It is alleged in the proof of claim that the petitioner holds as partial security for the repayment of the said debt a paid up policy of life insurance of the Provident Life and Trust Company of Philadelphia on the life of the bankrupt of the face value of $10,000, but of a present surrender value of about $7,525, issued December 19, 1902, being No. 101,001. Exceptions were filed by a creditor of the bankrupt to the above proof of claim, in which it was in substance alleged that whatever value there might be in the said policy of insurance "belongs to the estate of the said Robert S. Baird, and not to the said Grace Baird," and further, that the said policy should be assigned to the trustee in bankruptcy. The referee, September 22, 1916, allowed the proof of claim made by the petitioner as an unsecured claim, but limited it to the sum of $16,010.42, being $14,500 together with interest thereon until the date of the filing of the petition in bankruptcy; and ordered that the petitioner deliver or cause to be delivered to the trustee in bankruptcy as part of the assets of the bankrupt's estate the said insurance policy. The referee failed to find that there was any pledge of the said policy of insurance to Grace Baird as collateral security for the indebtedness due to her from the bankrupt "sufficient to secure" to Grace Baird "the present value and benefits" of the said insurance policy. It appears from the findings of the referee and is admitted by counsel on both sides that Grace Baird has a valid claim against the estate of the bankrupt for the sum of $14,500, with interest thereon to the date of the filing of the petition in bankruptcy.

The petitioner Wilmington Trust Company, trustee for Mary H. Baird, made and filed December 24, 1915, a proof of claim against the estate of the bankrupt in the sum of $26,000, alleging a preferential right to the same as against general creditors as representing a trust fund belonging to Mary H. Baird, and further alleging that the petitioner holds as partial security for the repayment of the said debt a policy of life insurance of the above mentioned insurance company on the life of the bankrupt of the face value of $30,000, and of a present surrender value of about $19,906.76, issued August 13, 1903, being No. 105,-

850. Exceptions were filed by a creditor of the bankrupt to the above proof of claim in which the existence of the alleged preferential right was denied, and it was alleged that the last mentioned policy of insurance did not belong to Grace Baird or Mary H. Baird, but that the same and any amount due thereon should be turned over to the trustee in bankruptcy to be administered as part of the bankrupt estate.    It further appears from the findings of the referee that it was agreed by counsel on both sides that no preference attached or applied to the claim made by the Wilmington Trust Company, trustee for Mary H. Baird, for the sum of $26,000, and that its status, if a valid demand, was that of a general claim.    The referee has found that the Wilmington Trust Company, as such trustee, has a valid general claim against the estate of the bankrupt in the said sum of $26,000, amounting with interest to the date of the filing of the petition in bankruptcy to $31,078.66.    The referee, however, failed to find that the life policy No. 105,850 had been validly pledged by the bankrupt as collateral security, and, as in the case of policy No. 101,001, he accordingly ordered that it be delivered by the Wilmington Trust Company, trustee as aforesaid, to the trustee in bankruptcy as part of the estate of the bankrupt.    No exception has been taken to the finding by the referee of the validity of the two above mentioned claims of $14,500 and $26,000, with interest, as general claims against the bankrupt's estate; nor has there been any petition for review by the trustee in bankruptcy, or any creditor of the bankrupt.    The validity of those demands as general claims, therefore, must be considered as admitted.    The whole controversy in the case has in substance been narrowed to the question whether there was a valid pledge of the two policies of insurance or either of them as collateral security for the payment of the indebtedness of the bankrupt.

[1-4]   The bankrupt, December 19, 1902, took out a life endowment policy, being No. 101,001 of the above mentioned insurance company, in the sum of $10,000, payable to the bankrupt or his assigns December 19, 1922, provided the bankrupt should be living at that date, but, in the event of his death before that date, to his executors, administrators or assigns, within sixty days after due notice and satisfactory proof of death.    The policy called for the payment of ten annual premiums, December 19, in each year.    The bankrupt, August 13, 1903, also took out a life endowment policy, being No. 105,850 of the same company, in the sum of $30,000, payable to the bankrupt or his assigns August 13, 1933, with a proviso and condition similar to that contained in the first mentioned policy.    Each of the two policies contained a provision that when the policy

"becomes a claim either by maturity of the endowment or by prior decease of the person whose life is insured, the person entitled to receive it may elect to take the amount due under the policy at the time in one sum or have the amount paid to him or her in equal annual instalments for 10, 15, 20, 25 or 30 years, with the further privilege of terminating the payment of the instalments at any subsequent anniversary of the date of the instalment certificate issued in place of the original policy, and receiving in lieu of the instalments then unpaid the equivalent on the basis set forth in the following table, which is calculated as for $10,000 insurance."

Each of the policies also contained a "condition" or "agreement" that:

"No assignment of this policy shall be of any force or effect unless made in writing, and recorded by the company on its books."

This provision is intended for the protection of the insurance company in making payment of the insurance; but cannot affect the force or validity as against the assured of any contract between the assured or his representatives or assigns and a third person touching the ultimate receipt and enjoyment of the insurance moneys. It appears that the bankrupt signed, sealed and acknowledged, November 10, 1911, a paper in the following words, letters and figures:

"Assignment, Conditional upon Death Prior to Maturity of Policy, and the Survival of the Assignee.

"For value received, I hereby transfer, assign and set over unto my sister, Grace Baird, and her assigns, all my right, title and interest in Policy of Insurance issued by The Provident Life and Trust Company of Philadelphia, No. 101001 dated 12th mo. 19th 1902, and all advantages to be derived therefrom: Provided, the said Policy shall become payable by reason of my death prior to the date when the endowment would have matured; and Provided also that the said assignee shall then survive me, otherwise all right, title and interest in the said Policy is to revert to me, as fully as if this assignment had never been made.

"I hereby reserve the right to revoke this assignment at any time during my life by filing with the Company an instrument of revocation duly executed under my hand and seal.

"Witness my hand and seal, this tenth day of November, 1911.

"The words 'I hereby reserve the right to revoke this assignment,' etc., inserted before signing.          [Signed]   Robert S. Baird.   [Seal.]

"Sealed and delivered in presence of
  "[Signed]  Abbye Hornsby.
  "[Signed]  Thomas K. Porter.
  "[Signed]  Frank Sheppard."

It further appears that on the same day, November 10, 1911, the bankrupt signed, sealed and acknowledged another paper, purporting to be an assignment of policy No. 105,850 to Mary H. Baird, his wife. This paper contained conditions similar to those appearing in the paper purporting to be an assignment to Grace Baird and certain other conditions not material to consider in this connection. Both of these papers, termed assignments merely for the purpose of identification, were filed with the insurance company and recorded on its books November 13, 1911, and certified copies were delivered to the bankrupt and until July 3, 1912, were retained by him in his possession unknown to his sister and wife. At the time of the signing, sealing and acknowledgment of the assignments the bankrupt was indebted both to Grace Baird and to Mary H. Baird. The assignment to Grace Baird does not mention or suggest the idea of collateral security. It purports to be a conditional assignment, subject to revocation at pleasure, of the right to receive and enjoy the amount of the insurance, if the same should become payable by reason of the death of the bankrupt prior to the maturity of the same, and if his sister should survive him at the date of such maturity. Otherwise the assignment should have no effect. On its face it indicates an intention on the part of the bankrupt that his sister should have the benefit of only what he could

not personally enjoy under the terms of the insurance policy, rather than an intention to secure the payment of his indebtedness to her, and thus to deprive himself of the personal enjoyment of any right he might have under the policy during his lifetime. Should the conditions of the assignment be satisfied Grace Baird was to receive the amount of the insurance absolutely for her own benefit, and not merely by way of collateral security for the payment of his indebtedness to her. And the instrument contained an authorization and direction to the insurance company in that behalf. Its purpose, so far as the rights of the company were to be affected, was to protect it in making settlement of the insurance claim. But while the paper did not on its face either expressly or by implication refer to the subject of collateral security, it is beyond question that had a delivery of the insurance policy been made to Grace Baird under such an instrument coupled with an agreement or undertaking, oral or in writing, between the assignor and assignee that the policy should be held by way of collateral security, subject to the specified conditions for the payment of indebtedness of the former to the latter, the transaction would have constituted as against the assignor a valid pledge of the policy as collateral security, however inadequate by reason of such specified conditions such security might prove. Similar considerations apply to the assignment by the bankrupt to Mary H. Baird of policy No. 105,-850. Until July 3, 1912, neither of the assignments nor a copy was delivered to Grace Baird or Mary H. Baird, nor did they have any knowledge of their execution or existence; nor until that time were the policies of insurance mentioned in such assignments delivered to them or either of them. The original assignments remained in the possession of the insurance company and until that time the copies together with the policies were retained by the bankrupt. It appeared from the record of the proceedings before the referee as certified to this court that July 3, 1912, Grace Baird gave to the bankrupt a receipt as follows:

"July 3rd, 1912.

"Received of my brother Robert S. Baird insurance policy #101,001 in the Provident Life and Trust Co. for $10,000, fully paid up and in which I am beneficiary as security for his indebtedness to me; also as Trustee for his wife, policy #105,850 in the Provident Life and Trust Co. for $30,000, fully paid as security for his indebtedness to his wife Mary H. Baird, in which policy she is beneficiary.          [Signed]   Grace Baird."

At the time of the signing of the receipt policy No. 101,001 together with the copy of its assignment was delivered to Grace Baird on her own account as collateral security, and policy No. 105,850 together, with the copy of its assignment was delivered to her as trustee for Mary H. Baird as collateral security. The receipt of July 3, 1912, indicates more than the mere fact of receipt of the policies. It was prepared or caused to be prepared by the bankrupt and was given to and retained by him, and is potent evidence that he delivered the policies as collateral security for the payment of his indebtedness to his sister and wife respectively. It is true that there was a literal inaccuracy in the statement in the receipt that his sister and wife were beneficiaries in the policies respectively; but I attach no importance

to this circumstance in view of the fact that, at the same time the policies were delivered by the bankrupt to his sister individually and as trustee for his wife, the certified copies of the assignments of November 10, 1911, were also delivered. It was not unnatural in view of those assignments to refer to his sister and his wife as beneficiaries in the policies. There was a further inaccuracy in the receipt in that it referred to the two policies as being fully paid up, the fact being that while policy No. 101,001 was then fully paid up, policy No. 105,850 then lacked one annual premium of being so paid. This error, however, was wholly immaterial, the receipt clearly identifying by number the policies intended to be pledged as collateral security. A policy of life insurance may be validly pledged by delivery, either with or without a written transfer. Jones on Collateral Sec. § 145. The delivery by the bankrupt July 3, 1912, of the policies of insurance to Grace Baird on her own account and in trust for Mary H. Baird respectively was not invalidated by the provisions of the bankruptcy act, as it occurred several years prior to the filing of the petition. The evidence excludes all idea of fraud in connection with such delivery of the policies. I find nothing in their terms or conditions to nullify the effect, as against the bankrupt, of a delivery of the policies in pledge as collateral security. Each of the policies contains various provisions that on non-compliance with certain conditions it shall be "null and void." But while it is provided that no assignment of the policy "shall be of any force or effect unless made in writing, and recorded by the company on its books," there is no provision expressly or by implication avoiding the policy for or by reason of the making of an assignment or pledge thereof not so recorded, or attempting so to do. On the assumption that an assignment or pledge of the insurance policies not in accordance with their conditions would not be valid as against the insurance company, I can perceive no ground on which it can be held that the bankrupt was incapacitated from delivering the policies to Grace Baird on her own account and as trustee for Mary H. Baird as collateral security for the payment of his indebtedness, thereby working an equitable assignment of them to her for that purpose, good as between him and her, though invalid as between the insurance company and him or her.

[5] Much stress is laid by the counsel for the trustee in bankruptcy upon the proposition that if the taking by the bankrupt of the receipt of July 3, 1912, and the delivery by him on that day to Grace Baird, individually and as trustee, of the insurance policies together with the assignments thereof of November 10, 1911, were intended to have any other effect than that of those assignments, it would constitute an attempt to vary instruments in writing by parol or oral evidence in violation of the rules of law. This position I deem untenable. The term "contract" is a misnomer as applied to either of the assignments of November 10, 1911, when viewed as between the bankrupt and Grace Baird or Mary H. Baird. They were executed by the bankrupt and recorded on the books of the insurance company without the procurement or knowledge of the assignee. The assignments were not, nor were copies of them, delivered to the assignees, nor had they or either of them any knowledge of their execution save as derived

from the copies handed to Grace Baird by the bankrupt together with the policies of insurance July 3, 1912. It is true there was a possibility that the assignments might have enured to the benefit of the assignees under and subject to the conditions and limitations expressed in them. But that result would not have been due to any contractual relations between the bankrupt and Grace Baird or Mary H. Baird with respect to the policies, but solely to the designation by the bankrupt to the insurance company of his sister and wife as the persons to whom, subject to such conditions and limitations, the insurance money should be paid, without liability on the part of the insurance company. To suppose that either the bankrupt or Grace Baird, with an understanding of the nature and provisions of the assignments of November 10, 1911, expected or intended that they should constitute the only collateral security for the payment of his indebtedness to her on her own account or to her as trustee for Mary H. Baird is to suppose a palpable absurdity. Grace Baird July 3, 1912, had no possible pecuniary interest in the assignment of policy No. 101,001 for the reason that the policy had then fully matured during his lifetime; the assignment, as before stated, containing the following provisos:

"Provided, the said policy shall become payable by reason of my death prior to the date when the endowment would have matured; and provided also that the said assignee shall then survive me, otherwise all right, title and interest in the said policy is to revert to me, as fully as if this assignment had never been made."

The assignment of policy No. 105,850 contained similar provisos. It is true that July 3, 1912, the later of the two policies had not fully matured; but it lacked the payment of only one annual premium, and in point of fact it fully matured during the lifetime of the bankrupt. It would be the height of unreason to attribute to ·the bankrupt or Grace Baird any idea that either of the assignments should or could be relied upon as constituting the only collateral security for the payment of the bankrupt's indebtedness. The inevitable conclusion in this connection is that when the two policies were received by Grace Baird from the bankrupt on her own account and as trustee for Mary H. Baird, the two assignments which had been preserved by the bankrupt together with the policies were incidentally handed by him to his sister at the time of the delivery of the policies. Had the assignments or either of them been deemed or intended to serve as collateral security, undoubtedly some reference would have been made in the receipt given by Grace Baird to the bankrupt on that occasion. But while the receipt is wholly silent upon that point, it expressly refers to the two policies as being received as collateral security. Some of the oral evidence touching the purpose and effect of the assignments of November 10, 1911, and of the delivery of the policies in connection with the taking of the receipt for them July 3, 1912, is not unnaturally lacking in scientific accuracy, coming as it did from the bankrupt and Grace Baird. But when considered as a whole and after due allowance for the absence of professional knowledge of the law on their part it is, I think, such as to leave no doubt of the correctness of the conclusions so far reached in this opinion relative to the giving

of collateral security. The evidences of indebtedness of the bankrupt to Grace Baird and Mary H. Baird changed in form after July 3, 1912, but its identity has not been affected, and it has been recognized and judicially established by the referee. Grace Baird holds in her own right her claim of $14,500, with interest, against the bankrupt and her equitable right, as against him, to policy No. 101,001, as collateral security. The claim of Mary H. Baird for $26,000, with interest, against the bankrupt and her equitable right as against him to policy No. 105,850 as collateral security, are represented by the Wilmington Trust Company as her trustee in lunacy.

[6] The Bankruptcy Act contains the following proviso to section 70a:

"Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets."

On the assumption that under the conditions of the policies their delivery in pledge by the bankrupt July 3, 1912, was inoperative as against the insurance company, such pledge did not avoid the policy, and I perceive no reason why the pledge was not good as against the bankrupt by way of collateral security for his indebtedness, and equally as against the trustee in bankruptcy. The policies passed, subject to the provisions of section 70a, to the trustee in bankruptcy, but subject also to the indebtedness for which they had been pledged. The claimants, being unable to collect the surrender value of the policies from the insurance company, it is proper that the trustee in bankruptcy who represents his creditors and is subject to the direction of the court in the administration of the bankruptcy estate, be directed on the delivery to him by the claimants of the two policies for that purpose, to receive from the bankrupt or collect from the insurance company such surrender value and apply the proceeds to the payment of the indebtedness of the bankrupt to them. Grace Baird and the Wilmington Trust Company, trustee in lunacy for Mary H. Baird, are each entitled to an order setting aside and vacating the order of the referee requiring that the policies of insurance held by them respectively be turned over to the trustee in bankruptcy as part of the bankrupt's estate, and directing that the trustee in bankruptcy forthwith secure from the insurance company an ascertainment and statement of the cash surrender value of the policies held by them respectively as of the date of the filing of the petition in bankruptcy (Everett v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. [N. S.] 154), and providing that unless the bankrupt shall within thirty days next after the trustee in bankruptcy shall secure such ascertainment and statement, pay or secure to the trustee in bankruptcy the sum so ascertained and stated, to be applied toward the payment of the demands of the claimants respectively, for the payment of which those policies were pledged as collateral security, the trustee in bankruptcy shall, with all conven-

ient speed, co-operate with the claimants in securing from the insurance company the cash surrender value of the two policies and apply the same to the payment of the said claims.

An order in accordance with this opinion may be prepared and submitted.

---

⬟For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes