## UNITED STATES v. LEARY ET AL., ADMINISTRATORS OF LEARY, ET AL.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 194. Argued October 4, 1917.—Decided October 15, 1917.

Where a defendant, under indictment for defrauding the United States of money, deposited stocks with a representative by whom another person was induced to execute the defendant's bail bond on the faith of the deposit as indemnity, and neither surety nor depositary had notice of any defect in the depositor's title, the surety's equity in the deposit was superior to that of the United States, though the stocks were procured with the proceeds of the fraud.

In such case, where, after the first bond, the surety executed several renewals in removal and *habeas corpus* proceedings, the parties repeatedly treating the proceedings and the indemnity agreement as continuing matters, *held*, by inference that the same understanding attached to a further bond for appearance at trial, and that the depositary's conduct in retaining only shares constituting the deposit, while settling with the defendant for others, confirmed such intention.

During the proceedings the shares originally deposited were sold by the depositary, with others belonging to the defendant, and, of new shares purchased with the proceeds, some were selected and retained by the depositary in lieu of those first deposited. *Held*, that the equity of the surety attached to them.

Upon an issue of fact as to whether stock claimed by plaintiff was held by defendant as indemnity for interveners, defendant's sworn answer, filed before the intervention and averring that he so held the

(1)

stock, was evidence for the interveners as an act, if not as a statement of facts.

Whether defendant should have an allowance as trustee is left to the trial court.

229 Fed. Rep. 660, affirmed.

THE case is stated in the opinion.

*Mr. Marion Erwin*, Special Assistant to the Attorney General, for the United States:

There was no extension to the bond of 1902 of the agreement to indemnify Leary. That required an express agreement, which was lacking. *United States* v. *Ryder*, 110 U. S. 729.

The averments of the intervention show, as matter of law, that the temporary bail bond for appearance of Greene before the commissioner had long prior to January 20, 1902, become *functus officio*.

Even if Leary had proved an express contract relative to the bond of 1902, her claim would be inferior to that of the Government. *Boone* v. *Childs,* 10 Pet. 177; *Shirras* v. *Cary,* 7 Cranch, 34; *Vattier* v. *Hinde,* 7 Pet. 252; *Hallett* v. *Collins,* 10 How. 174; *Grimstone* v. *Carter,* 3 Paige Ch. 420.

A promise to pay a debt out of a particular fund creates no equitable lien or right in the fund. *Seymour* v. *Railroad Co.,* 25 Barb. 284; *Grinnel* v. *Suydam,* 3 Sandf. 132; *Drake* v. *Taylor,* 7 Fed. Cas., No. 4067; *Boone* v. *Childs,* 10 Pet. 193; *Christmas* v. *Russell,* 14 Wall. 69.

As to the law relative to the tracing of trust funds, see *May* v. *LeClaire,* 11 Wall. 217, 236; *Smith* v. *Vodges,* 92 U. S. 186; *Moore* v. *Crawford,* 130 U. S. 122; *Oliver* v. *Piatt,* 3 How. 333; *Van Allen* v. *Bank,* 52 N. Y. 1–5; *National Bank* v. *Insurance Co.,* 104 U. S. 70; *Knatchbull* v. *Hallett,* 13 Ch. Div. 696; *Cook* v. *Tullis,* 18 Wall. 332; *Richardson* v. *Shaw,* 209 U. S. 365; *Sexton* v. *Kessler,* 225 U. S. 90.

*Mr. Aubrey E. Strode*, with whom *Mr. J. T. Coleman, Jr.,* was on the brief, for Leary *et al.,* Administrators.

*Mr. Abram J. Rose,* with whom *Mr. Alfred C. Petté* was on the brief, for Kellogg, appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

This proceeding began as a suit by the United States to charge the defendant Kellogg with a trust in respect of funds alleged to have been received by him from Greene and to have been obtained from the plaintiff by Greene through his participation in the well-known Carter frauds. *United States* v. *Carter,* 217 U. S. 286. After the evidence had been taken, leave to intervene was granted, on terms, to the administratrix of the estate of James D. Leary, predecessor of the present Leary appellees. 224 U. S. 567. The fund now in question is four hundred shares of the stock of the Norfolk and Western Railway Company, which the Learys and Kellogg say were held by Kellogg as security to their intestate against his liability upon a bail bond for Greene. A judgment upon the bond has been paid by them. The Circuit Court of Appeals has sustained the Learys' claim and the United States appeals. 229 Fed. Rep. 660. 144 C. C. A. 70.

Although Kellogg argues the contrary, it may be assumed for the purposes of decision that the United States traces its money into the stock, since Kellogg makes no personal claim to it. On the other hand it appears that before the intestate Leary became bondsman for Greene on December 14, 1899, Kellogg wrote to him on the same day, stating that Greene had placed in his hands three hundred shares of stock of the Delaware, Lackawanna and Western Railroad Company "as indemnity to you for becoming his bondsman in the matter of the United States against Greene, Gaynor and others, now pending in the district court" to hold until Leary was released from the said bond or to apply in payment of the obliga-

tion.  We agree with the Circuit Court of Appeals that neither Kellogg nor Leary had notice of any defect in Greene's title.  The only question requiring discussion is whether the present stock is held upon the same terms against a later bond that Leary signed.

The proceedings in which the bond of December, 1899, was given were for the removal of Greene from New York to Georgia.  On February 20, 1900, the United States Commissioner found that there was probable cause. Greene was committed to the marshal and the bond was cancelled.  On the same day another bond seems to have been given by Leary that was satisfied on May 28, 1901, when the district judge issued a warrant for removal. On May 21 Kellogg wrote to Leary that it would be necessary "to renew the bail given by you for Captain Greene, and for which I hold security for your protection," fixing a time,. and adding "This new bond is to take the place of the old one without additional liability."  The bond was given on May 28 and Greene was enlarged. On June 8 Greene was surrendered into the custody of the marshal in New York and a new bail bond was executed by Leary after having received a letter from Kellogg, dated June 6, saying "I am obliged to trouble you again to renew the bond in the Greene and Gaynor matter" fixing the time and adding "The reason for the matter is not that you have to incur any additional liability, but simply to enable them to carry their case to the United States Supreme Court."

The case was taken to this court and an order of the Circuit Court refusing a writ of *habeas corpus* was affirmed on January 6, 1902.  *Greene* v. *Henkel,* 183 U. S. 249. Thereafter, on January 20, Leary signed, as surety for Greene, the bond for $40,000, conditioned for Greene's appearance in Georgia, which was forfeited and which the Learys have paid.

More words could not make it plainer than it is made

by the letters that the "matter" was regarded by the parties as a continuing one and that the bond of June 8, 1901, was executed on the agreement that the security also should continue. The only natural inference as to the later one of 1902 that took its place is that the understanding remained in force without the requirement of a repetition of the already repeated assurance. This inference is confirmed by the conduct of Kellogg. He had held stocks and bonds for Greene and settled with him, retaining only this stock. Even if his original answer under oath filed before the Learys intervened is not evidence for them as a statement of facts, it was an act as well as a statement and showed that at that time he asserted that the stock was security given by Greene. It is true that the stock was not the same that was mentioned in the first letter. Greene was allowed to make changes and substitutions. But this and other purchases were made with the proceeds of the sale of the first and other stocks before the letters of May and June, 1901 were written, and without considering whether in the interest of good faith the stock retained should or should not be attributed to the portion of the funds coming from that previously pledged, the selection and retention of it in place of the other is enough when taken with the agreement disclosed. See *National Bank* v. *Insurance Co.*, 104 U. S. 54, 68; *In re Hallett's Estate*, 13 Ch. Div. 696. It seems to us unnecessary to add more to the discussion by the Circuit Court of Appeals. Whether Kellogg should receive an allowance as trustee may be left to the District Court.

*Decree affirmed.*