LEARY et al. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. January 16, 1919.)

No. 1640.

1. DEPOSITS IN COURT ⬯11—DISTRIBUTION OF FUND IN COURT—CLERK'S POUNDAGE.

Where an intervener recovers a part of a fund in court, also claimed by the United States, the clerk's poundage on the part so recovered is properly deducted therefrom.

2. PRINCIPAL AND SURETY ⬯185—RIGHTS OF SURETY IN INDEMNITY FUND.

The right of a surety on a bail bond to recover out of an indemnity fund provided by the principal his reasonable expenses in defending a suit on the bond does not extend to costs and fees expended in defending against a supplementary proceeding by the government to collect the judgment.

3. PRINCIPAL AND SURETY ⬯185—RIGHTS OF SURETY IN INDEMNITY FUND.

A deposit of securities to indemnify the surety on a bail bond carries an implied warranty of title, but not that the title will not be questioned, and the surety is not entitled to charge the fund with the expense of successful litigation in defending his title as against his adversary, which was adjudged owner of the securities subject to his claim, whether the litigation is conducted by himself or the depositary.

4. COSTS ⬯164(1)—ALLOWANCES ADDITIONAL TO COSTS—ATTORNEY'S FEES.

The losing party in a litigation cannot be charged with the expenses of his adversary beyond taxable costs which may be adjudged against him.

Appeal from the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Suit in equity by the United States against Benjamin D. Greene and others, in which Daniel J. Leary and George Leary, administrators, intervened. From the decree, interveners appeal. Affirmed.

Aubrey E. Strode, of Amherst, Va., and J. T. Coleman, Jr., of Lynchburg, Va., for appellants.

Marion Erwin, Sp. Asst. Atty. Gen., for the United States.

Before KNAPP and WOODS, Circuit Judges, and CONNOR, District Judge.

KNAPP, Circuit Judge. The previous course of this litigation appears in the opinions of this court and the Supreme Court on former appeals. Leary v. United States, 184 Fed. 433, 107 C. C. A. 27; Leary v. United States, 224 U. S. 567, 32 Sup. Ct. 599, 56 L. Ed. 889, Ann. Cas. 1913D, 1029; Leary v. United States, 229 Fed. 660, 144 C. C. A. 70; United States v. Leary, 245 U. S. 1, 38 Sup. Ct. 1, 62 L. Ed. 113. A brief statement will disclose the questions now to be decided.

When Greene was arrested in 1899, charged with defrauding the government, he placed in the hands of Kellogg, his attorney, certain securities, represented by the fund afterwards paid into court, to indemnify Leary, appellants' intestate, for going on his bond. The last bond signed by Leary was forfeited, Greene having absconded, and in a suit thereon the United States recovered a judgment against his estate, which was paid on July 26, 1910, amounting then, with interest and costs, to $40,802.

Meanwhile, in 1903, the United States had sued Kellogg and others for an accounting, and to have the 400 shares of Norfolk & Western stock, standing in his name on the books of that company, declared to be its property, on the ground that the same, or securities exchanged for it, had been purchased by or for Greene with moneys of the United States which he had misappropriated. The Leary estate was not made a party to this suit, but in 1908, when the testimony had been taken and the case was ready for hearing, it filed a bill of intervention, setting up the agreement of Greene through his attorney to indemnify Leary, alleging that the Norfolk & Western stock constituted the indemnity fund, and praying that it be applied accordingly. Without reciting the subsequent proceedings, it suffices to say that the decision of this court on the second appeal (229 Fed. 660, 144 C. C. A. 70), affirmed by the Supreme Court (245 U. S. 1, 38 Sup. Ct. 1, 62 L. Ed. 113), determined with finality that "the estate of Leary has established a claim to the stock in question which is superior to the claim of the United States." It remains to determine the extent of that superior claim; that is, the reimbursement to which the estate is entitled.

[1] The decree under review allows the estate only the $40,802 paid by it on July 26, 1910, with interest from that date, less the sum of $30,000 paid on account in December, 1917, when the stock was sold by consent and the proceeds brought into court, and less also a clerk's poundage fee of 1 per cent., under section 828 of the Revised Statutes (Comp. St. § 1383). The balance of the fund, less the poundage thereon, was directed to be paid to the United States.

As this statutory fee is properly exacted from the person to whom the impounded money is paid, we think it was clearly correct to deduct 1 per cent. from the amount which each party received, and we perceive no reason why the government's share should be diminished by the poundage fee on the estate's share. Besides, if poundage be an item of taxable costs, like other required payments to the clerk, and recoverable as such from the losing party, as seems to be assumed in Blake v. Hawkins (C. C.) 19 Fed. 204, its allowance to the estate in this proceeding would be in effect to charge the government with costs, which is in no case permissible.

[2] The trial court held that the indemnity contract covered the reasonable expenses, including counsel fees, incurred by the estate in defending the suit of the United States on the forfeited bond· but the record indicates that those expenses had been paid by Greene It appears, however, that after the judgment in that suit was recovered some proceeding to compel its payment was instituted in the Surrogate's Court of New York, in which the Leary estate was then in process of administration. In resisting that proceeding the estate expended the sum of $591.46, admitted to be reasonable in amount, which it now seeks to have refunded. We deem it not doubtful that this claim was rightly disallowed. The liability of the estate was definitely established by the judgment, which was not challenged by appeal, and no good reason appears for attempting to de-

feat or delay its collection. This being so, it seems evident that the indemnity fund should not be charged with an unwarranted outlay.

We come, then, to the principal claim of appellants, rejected by the court below, namely, that the Leary estate is entitled, as against the United States, to be reimbursed for its expenses and counsel fees in prosecuting the intervention, and thereby establishing the validity and priority of its lien. The government first urges the objection, which applies also to the $591.46 above mentioned, that this claim cannot be considered because not set up in the amended petition, which, save that it prays for general relief, demands repayment only of the judgment obtained by the United States. This objection loses its force when the exact status of the litigation is taken into account. The first appeal involved merely the right of the estate to intervene, which the Supreme Court sustained, and nothing else was decided. The second appeal turned on the question whether the evidence adduced was sufficient to prove an agreement to indemnify Leary, and whether the indemnity fund was represented by the Norfolk & Western stock. On this question the trial court ruled against the estate; but it was held on appeal, as above recited, that the estate had established a claim superior to the claim of the United States. There was no determination of the scope of that claim, for occasion did not arise to construe the indemnity contract in that regard. It was therefore proper for the court below, to which the cause was remanded, to permit an amendment of the petition, or to treat it as amended, so as to include a claim which is but incident to the main demand of the intervention. We think it should be examined on the merits.

The contract of indemnity appears in certain letters which Kellogg wrote to Leary in reference to signing the bail bonds of Greene. In the first of these, under date of December 14, 1899, he specifies the securities which Greene had placed in his hands, "as indemnity to you for becoming his bondsman. * * * It is understood that I am to hold these until you are released from the said bond, or in case that your liability should be established, that it is to be applied in payment of your obligation." And later, in May, 1901, when another bond was required, he says: "It will be necessary to renew the bail given by you for Capt. Greene, and for which I hold the security for your protection." But how can it be said that this promise of indemnity and protection includes the expenses here in dispute? Such an outlay is certainly not within the express terms of the undertaking, and in the nature of the case could not have been contemplated by the parties. As the estate's right to reimbursement rests wholly and of necessity upon Leary's want of knowledge that the government could have any claim upon the stock pledged for his security, it is impossible to assert that the expenses incurred in contesting that claim, when it was subsequently made, were intended to be covered by the indemnity agreement; and that contention of appellants may be passed without further comment.

[3] It is argued that the claim in controversy should be sustained because Greene's pledge of stock carried an implied warranty of

title, and Leary acquired the rights of an innocent purchaser for value. If both propositions be accepted, and their correctness need not be questioned, we have to consider what warranty was implied by the pledge, and whether, as the matter turned out, Leary's estate had any cause of action against Greene. It seems to be well settled that in such case the implied warranty is, not that the pledgor has good title, but that good title will be conferred on the pledgee. There is no warranty that the property pledged will not be claimed by a third party, and therefore no breach of the contract, unless such a claim be successfully asserted. The warranty implied in the sale or pledge of personal property is like the covenant of general warranty in a conveyance of real estate, which is not broken except by eviction of the grantee under a paramount title; that is to say, the pledgor's implied warranty makes him liable to the pledgee only in case the latter loses the property to a stranger who establishes a better right to it.

In 35 Cyc. 416, where numerous decisions are cited, the rule in regard to the warranty implied on a sale of personal property is thus stated:

"A warranty of title refers only to the condition of the title at the time of the sale, and is a warranty only against a superior title, or existing incumbrances, and not that the title will not be disputed."

But Leary did not "lose the property." On the contrary, as the courts have conclusively held, he got a perfectly good title even as against the United States, with whose stolen money Greene had purchased the pledged securities. True, his title was assailed, and in defending it his estate incurred expenses of considerable amount for counsel fees and the like. But as the defense was wholly successful, and Leary's title adjudged to be superior to that of the adverse claimant, there was no breach of Greene's implied warranty of title, and consequently that warranty did not of itself make him liable for the expenses of the litigation. It follows, of course, that those expenses cannot be charged upon that share of the indemnity fund, which, subject to the prior right of the Leary estate, belongs to the United States as in law the successor in interest of Greene. In short, the doctrine of implied warranty does not sustain the appellants' contention.

The further argument is advanced that in the government's suit to recover the stock Kellogg's attitude, as disclosed by his answer and otherwise, was unfriendly and even hostile to the Leary estate; that as trustee of the indemnity fund he failed to do what he should have done to assist and protect the estate; that in consequence it became necessary for the estate itself to intervene in that suit; and that therefore the estate is entitled to recover the expenses which it is alleged would have been allowed to Kellogg out of the fund if he had performed his duty. But this argument rests on an assumption which seems to us clearly erroneous. If Kellogg had from the first actively aided the estate, and in a contest in the original suit, substantially like that which actually followed the intervention, had established the validity of the Leary claim, on what theory would his expenses have been chargeable upon that part of the fund adjudged in

the same suit to belong to his adversary? In that event his expenses would have been payable from the moneys awarded to the estate, because incurred in benefiting the estate, but we are aware of no rule of law under which they could have been ordered paid out of the moneys awarded to the United States.

[4] In the last analysis the case at bar involves no unfamiliar principle. One of the parties to the controversy, the United States, claimed all the Norfolk & Western stock, now represented by the fund in court; the other party, the Leary estate, claimed the greater part of it. The courts have decided that the estate has the superior claim to such portion as will discharge the obligation incurred by Leary in becoming bondsman for Greene, and that the balance of the fund belongs to the United States. The contest has been greatly prolonged and the estate put to heavy expense. But the case is by no means exceptional in that respect. It usually happens that the successful litigant gets less in net results than is adjudged to be his due, because he must himself pay the lawyer who won his suit. The costs that can be taxed against the losing party—and none at all can be taxed against the government—are little more than nominal, and the winner is therefore out of pocket for the fees of his counsel. If this be unjust to the one found to be in the right, it is because the law gives him only the amount of his recovery and the scanty sum allowed as taxable costs. We find no authority for subjecting the defeated party to any greater liability. In Hauenstein v. Lynham, 100 U. S. 483, 491 (25 L. Ed. 628), the Supreme Court said: "It is a settled rule in this court never to allow counsel on either side to be paid out of the fund in dispute." To the same decisive effect are, among others, National Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443, 103 U. S. 104, 26 L. Ed. 561, Hobbs v. McLean, 117 U. S. 567, 582, 6 Sup. Ct. 870, 29 L. Ed. 940, Riddle v. Hudgins, 58 Fed. 490, 494, 7 C. C. A. 335, and Pike v. Cincinnati Realty Co., 179 Fed. 97, 103, 102 C. C. A. 391.

The claim for expenses here considered is clearly not within the terms of the indemnity agreement, and we are persuaded that it cannot be sustained on the theory of Greene's implied warranty of title, nor yet on the theory of subrogation to the supposed rights of Kellogg, if he, instead of the estate, had carried on the litigation. Whatever its hardship, it is simply the case of a successful suitor whom the law compels to pay his own counsel.

Affirmed.