**UNITED STATES v. SULLIVAN et al.**

No. 1867.

District Court, W. D. New York.

May 28, 1937.

George L. Grobe, U. S. Atty., R. Norman Kirchgraber, Asst. U. S. Atty., both of Buffalo, N. Y., and James H. Hanley, of Washington, D. C., Sp. Atty.

Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y. (Lyman M. Bass and Theodore G. Kenefick, both of Buffalo, N. Y., of counsel), for defendant Marine Trust Co. of Buffalo.

Moore & Norton, of Kenmore, N. Y., for defendant State Bank of Kenmore.

KNIGHT, District Judge.

This action was commenced on March 16, 1934, for the purpose of subjecting to the lien of a judgment recovered by the plaintiff the cash surrender value of a policy of insurance issued upon the life of Frank T. Sullivan. The insured having died on June 6, 1935, a supplemental bill was filed substituting his administratrix as a party and praying that the principal amount payable under the policy be made subject to the lien of the judgment.

On March 5, 1923, plaintiff brought suit in the Supreme Court of the District of Columbia against Frank T. Sullivan and others to recover on account of alleged fraud in connection with a certain contract between the plaintiff and J. L. Phillips and John Stephens for the sale of war materials and the resale by said Phillips and Stephens of a portion of such materials to Frank T. Sullivan and to secure an accounting of profits, if any, realized by Sullivan in connection therewith. The action resulted in the entry of a judgment against Sullivan and others on July 25, 1929, in the amount of $947,610.73. As the result of an action commenced in this court on February 2, 1933, based upon said judgment of the Supreme Court of the District of Columbia, a judgment was rendered in this court on July 31, 1933, in favor of the plaintiff and against Sullivan in the same amount. The Fidelity & Deposit Company of Maryland, by reason of having executed a surety bond, was held liable in the amount of said bond,·

namely, $500,000, which amount it paid. This is the only payment on the judgment.

The policy of insurance in question was issued December 31, 1921, in the principal amount of $50,000 by the Mutual Benefit Life Insurance Company of Newark, N. J., and by its terms was payable to the estate of the insured. The policy by its terms reserved to Sullivan the right to change the beneficiary at any time. On March 23, 1923, his wife, Ednah Mabie Sullivan, was designated as beneficiary, the right to make any further change of beneficiary and to procure loans on said policy without the consent of the beneficiary being reserved.

Pursuant to such reserved right, and in consequence of a trust agreement with the Buffalo Trust Company, said Trust Company was substituted as beneficiary under the policy on April 29, 1925. The purpose of the trust was recited as follows: "the grantor desires to make provision for the maintenance and support of his wife, Ednah Mabie Sullivan, and for the support and education of their son, Peter Mabie Sullivan, and for the maintenance and support of his daughter, Florence Sullivan McNeil, and for the payment of certain of his obligations following his death," and provided that the "Trustee may, in its discretion, out of said proceeds pay any notes or other obligations of the Grantor or any notes or other obligations endorsed by the Grantor at Buffalo Trust Company or at the State Bank of Kenmore." After providing that the trustee might loan or give outright to the executor or administrators the amount required for payment of estate inheritance and transfer taxes, the agreement directed the disposition of the income and principal between his wife, son, and daughter. The agreement provided that it might be modified, supplemented, and/or revoked by the grantor at any time. At the same time Sullivan delivered to the Buffalo Trust Company a letter covenanting not to exercise the right to modify, supplement, or revoke the trust agreement so long as any notes or obligations made or indorsed by him should be held by the banks, except with the written consent of said banks.

The Buffalo Trust Company was subsequently merged with the Marine Trust Company of Buffalo, and thereafter and on February 5, 1926, the agreement was modified in respect to the distribution of the balance of the trust remaining after payment of any notes or other obligation indorsed by the grantor at the Marine Trust.

Company of Buffalo or at the State Bank of Kenmore. The agreement provided that, except as modified, the trust indenture of April 29, 1925, is "ratified, confirmed and continued in full force and effect including the provision therein contained that the same be modified, supplemented and/or revoked at any time by the Grantor during his lifetime provided, however, that no such modification shall deprive the Trustee of the right therein conferred upon it to pay from the proceeds of such life insurance policies any notes or other obligations of the Grantor or any notes or other obligations endorsed by the Grantor at the Marine Trust Co. of Buffalo or at the State Bank of Kenmore." On March 18, 1926, request was made by Sullivan of the insurer that the Marine Trust Company, as trustee, be made beneficiary under the policy. Two supplemental indentures related only to withdrawal of a portion of the insurance coverage and the making of a policy loan to the insured by the insurer.

On April 29, 1925, when the trust agreement was first executed, Sullivan was indebted to the Buffalo Trust Company as indorser on notes of the Sullivan-McNeil Lumber Company in the amount of $102,193.44. This amount was subsequently paid. He became further indebted to the Marine Trust Company on May 6, 1927, when he guaranteed payment of a bond and mortgage given by the Frank T. Sullivan Lumber Company, Inc. to secure a loan of $50,000. By virtue of an action instituted on January 6, 1932, the mortgage was foreclosed and the property sold for the sum of $25,000, and a deficiency judgment in the amount of $36,330.68 was entered on August 17, 1932. This judgment remains wholly unpaid.

The indebtedness of Sullivan to the State Bank of Kenmore at the time of the original trust agreement consisted of direct liability in the amount of $25,000, liability as indorser in the amount of $25,000, and contingent liability on customers' paper in the amount of $7,365.83. Liability to the State Bank of Kenmore has been continuous to the present time, the balance remaining due being $20,395.54, with interest from February 1, 1936. The State Bank of Kenmore was not made a party to the action at the time it was commenced but was granted leave to intervene on March 16, 1936.

After issue of execution upon plaintiff's judgment and its return unsatisfied, supplementary proceedings were instituted, and on February 2, 1934, the court upon an ex parte application entered an order directing the Marine Trust Company to pay over to the plaintiff the cash surrender value of the policy. The order was set aside on March 15, 1934, and this action was commenced when defendant Marine Trust Company refused to turn the cash surrender value to plaintiff.

On August 31, 1936, the insurer was ordered to pay into court the amount payable under said policy, to wit: $40,066.66, subject to the rights of the parties as subsequently determined by the court.

Under the terms of the trust agreement, the defendants Ednah Mabie Sullivan, Peter Mabie Sullivan, and Florence Sullivan McNeil are entitled to share in the proceeds of the insurance only after payment of all of the indebtedness of the insured to the Marine Trust Company and the State Bank of Kenmore. Inasmuch as the indebtedness of the insured to the banks is greater than the entire proceeds of the insurance, in view of the decision hereinafter made, further consideration will be given as though the issue were solely between the government and the defendant banks. It is unnecessary to consider the questions raised between the government and the individual defendants.

In its final analysis, plaintiff's contention is based on these three grounds: (1) That its claim, asserted in 1923 and ripened into a judgment on July 25, 1929, was a continuing debt of Sullivan from the commencement of the action on March 5, 1923; (2) that the defendants Marine Trust Company and State Bank of Kenmore obtained no vested interest by virtue of any trust agreement; and (3) that plaintiff is entitled to priority in payment over such banks.

Plaintiff's claim was based on fraud claimed to have arisen out of a contract between the United States government and third parties. The complaint alleged acts committed by Sullivan and others in fraud of the government and to the personal enrichment of Sullivan and such others. Following a determination of the question of fraud, an accounting was had, and a decree awarding judgment was entered July 25, 1929. In fixing the time when a claim of this nature becomes a debt, reference may be had to the laws relating to insolvency and bankruptcy. Until final fixation of the amount of liability, the claim was unliquidated. People v. Metropolitan Surety Co.,

205 N.Y. 135, 98 N.E. 412, Ann.Cas.1913D, 1180. An unliquidated claim for damages occasioned by fraud is not a provable debt under the Bankruptcy Law (section 63 [11 U.S.C.A. § 103]) ; and tort claims not reduced to judgment are not provable in bankruptcy. In re Kroeger Bros. Co. (D. C.) 262 F. 463; In re Cunningham (D.C.) 253 F. 663. The rule is the same even though the claim was reduced to judgment after the filing of the petition in bankruptcy. In re Crescent Lumber Co. (D.C.) 154 F. 724. An exception is made, however, when the tort is waived and proof can be made on a contract, express or implied. Crawford v. Burke, 195 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147; Kreitlein v. Ferger, 238 U.S. 21, 24, 35 S.Ct. 685, 59 L.Ed. 1184; In re E. J. Arnold & Co. (D.C.) 133 F. 789; In re Filer (D.C.) 125 F. 261. In cases of fraud not involving an express contract, but resulting in unjust enrichment, an implied obligation to pay may be created. Schall v. Camors, 251 U.S. 239, 40 S.Ct. 135, 64 L.Ed. 247. As stated in Clarke v. Rogers (C.C.A.) 183 F. 518, 522, affirmed 228 U.S. 534, 33 S.Ct. 587, 57 L.Ed 953: "This, of course, is a mere fiction of law; but, like all other such fictions, it is effectual when it will accomplish the ends of justice." Thus, apart from the question of liquidation or contingency, the government had a provable claim in 1923. The fact that it was unliquidated would not bar its existence as a provable debt in bankruptcy, since section 63b (two subsections are designated b) of the Bankruptcy Act (11 U.S.C. A. § 103(b) provides for liquidation of claims. The debt was not contingent, since all of the facts were in existence of which proof would be required to settle the liability. It is thus found that under the Bankruptcy Act a debt upon which a claim could have been filed did exist in favor of the government in 1923.

Prior to the effective date of section 55-a of the Insurance Law of the State of New York, Consol.Laws, c. 28 (March 31, 1927) which made the avails of an insurance policy payable to a beneficiary named therein exempt from debts of the insured, they were liable for such debts where the insured had the right to change the beneficiary. Section 55-a did not affect debts incurred prior to its effective date. In re Messinger (C.C.A.) 29 F.(2d) 158, 68 A.L.R. 1205; In re Sturdevant (D.C.) 29 F.(2d) 795; In re Firestone (D.C.) 2 F.Supp. 96; Addiss v. Selig, 264 N.Y. 274, 190 N.E. 490;

Cecilian Operating Corp. v. Berkwit, 151 Misc. 814, 272 N.Y.S. 291. When that section became the law, Sullivan owed debts to the government and the State Bank of Kenmore. While Sullivan originally did have the right to change the beneficiary, he deprived himself of such right as regards the banks by the trust agreement. There is nothing to show, nor is it pleaded or claimed, that Sullivan was insolvent when the trust agreements were made. While it may be significant that the trust agreements were all made prior to the decree on the original suit against Sullivan and others, no fraud is asserted. No case is called to the court's attention in which it is held that an insured does not have the right, when solvent, to prefer one creditor over another and to relinquish his right to change a beneficiary. Indeed, cases cited by the plaintiff, in effect, hold that he had such right. In re Greenberg (C.C.A.) 271 F. 258, is authority only for the rule that a beneficiary who may be displaced at any time has no vested interest. The trustee herein could not be so displaced. Gould v. Flictmann, 188 App.Div. 759, 176 N.Y.S. 631, involved a policy transferred without consideration—a gift and fraud in the transfer was found. Stoudt v. Guaranty Trust Co., 150 Misc. 675, 271 N.Y.S. 409, was a suit to set aside a transfer of policies on the ground of fraud.

Irrespective of the question of whether or not the claim of the government was a debt as of the date of the commencement of the action for fraud, the lien of the debt did not attach to any property owned by Sullivan until execution on the judgment rendered in this district on the fraud decree was issued. The complaint is based on the theory that Sullivan retained at all times the right to change the beneficiary and therefore retained a vested interest. He did retain a vested interest, but only subject to the terms of the trust agreement. The banks were bona fide creditors of Sullivan when the trust agreement was first made. The trust agreement was given for a consideration. In the absence of fraud in the making of the trust agreement and in default of any proof of insolvency, Sullivan had the right to secure one creditor, even though it subsequently resulted in a loss to another creditor. In re Baird (D.C.) 245 F. 504; Burlingham v. Crouse, 228 U. S. 459, 33 S.Ct. 564, 57 L.Ed. 920, 46 L.R. A.(N.S.) 148. Sullivan then owed the Marine Trust Company (or its predecessor,

Buffalo Trust Company) $102,000 and the State Bank of Kenmore $57,665.80, directly and as endorser. This is not in dispute. As to the State Bank of Kenmore, Sullivan has been liable to it continuously since the date of the first trust agreement. As to said banks, there was a consideration. It is claimed by the government, and not controverted by the defendant, that the original liability of $102,000 to the Marine Trust Company was discharged some time prior to May, 1927, at which time Sullivan became liable as a guarantor on a bond executed to the bank as collateral to the payment of an indebtedness of the Sullivan Lumber Company, Inc., for a loan of $50,-000, secured by the mortgage aforesaid given by such company and out of which the deficiency aforesaid arose, and such deficiency has never been satisfied. The bond guarantee was executed a little upwards of a month after section 55-a, supra, became law. The operation of such statute does not affect adversely the right of the bank. On the other hand, it further affirms the right of the bank, since then the beneficiary is entitled to the proceeds as against creditors, regardless of any of the reservations of the right to change beneficiary. Insured's interest was never divested other than as divested by the trust agreement.

■ The record does not disclose whether or not the indebtedness owed by Sullivan continued past the time of enactment of section 55-a and until the further indebtedness by way of guarantee came into existence in 1927. Assuming that it did not, it is found that at the time of enactment of section 55-a the Marine Trust Company was beneficiary of the policy as trustee to pay such obligations to the Marine Trust Company as might become due. A pledge under such circumstances would be good as to any one who had not acquired a lien on the specific property pledged prior to the making of a loan by the creditor to the debtor. Inasmuch as debtor might have made a valid pledge of the policy to the Marine Trust Company, he could also accomplish the same result by establishing a trust. He conveyed away his property for a certain purpose. This purpose was to pay any indebtedness he owed the Marine Trust Company at the time of his death. If he owed the bank nothing, of course, the purpose of the trust would fail, and the proceeds would revert to the grantor. Prior to the time of Sullivan's death, the beneficiary had no power over the trust except to hold the policy. It could not have surrendered the policy and applied the proceeds to any indebtedness. Under the terms of the agreement, the trustee was to hold the policy till it matured by reason of the death of the insured. Then, if the insured was indebted to the bank, the bank was to be paid. The facts show that payment of the indebtedness to the bank will absorb the entire amount of the trust fund. Further, since obviously the trust was intended to continue during insured's life, it was intended that subsequent obligations to the bank should come under it.

■ A question here presented, as far as the Kenmore Bank is concerned, is whether, under section 55-a, a trustee for the benefit of a particular creditor or creditors is entitled to take the proceeds of the policy as against other creditors, the obligations of debtor to all having been incurred prior to the effective date of section 55-a. There is no reason why such a trustee may not take the proceeds for payment of the debt of the creditor to whom he is bound by the terms of the trust agreement. To accomplish the desirable end of satisfying some of his creditors and at the same time retaining the advantage of the coverage of the insurance policy, Sullivan chose to place the proceeds in a trust for the said creditors. This proceeding was valid unless another creditor could set aside the transfer on the ground of fraud or by reason of a prior lien on the policy. The reason for the argument, that a beneficiary may not take as against creditors existing at the time of enactment of section 55-a, fails when the beneficiary takes in trust for another creditor of equal standing:

■ The plaintiff contends that the claim of the government has priority over the bank claims by virtue of the provisions of sections 191 and 192 of title 31 of the United States Code (31 U.S.C.A. §§ 191, 192) and section 212 of the New York Surrogate's Act. It is clear that the sections of the federal statute apply only where the debtor's estate, either by death, bankruptcy, or insolvency, has passed to an administrator or an assignee for the benefit of creditors. "It does not apply, then, to a conveyance, assignment, or transfer, by whatever means accomplished, to a real or pretended creditor or creditors in payment or satisfaction of a debt or claim." Bush v. United States (C.C.) 14 F. 321, 323; 65 C.J. 1369; Bouchaud v. Dias et al., 1 N.Y. 201; United States v. Delaware Ins. Co., 25 Fed.Cas.

700

811, 813, No. 14,942; United States **v.** Western Union Telegraph Co. (C.C.A.) 50 F.(2d) 102. Section 212 of the New York Surrogate's Act does not extend the application of the federal statute and only applies to funds placed in the hands of an executor or administrator.

A bona fide transfer, pledge, or mortgage of property or the levy of an execution against it before the right of preference of the United States attaches removes it from the effect of any such priority. Brent v. Bank of Washington, 10 Pet. 596, 9 L.Ed. 547; Thelusson v. Smith, 2 Wheat. 396, 4 L.Ed. 271; United States v. Delaware Ins. Co., Fed.Cas. No. 14,942; Leary v. United States (C.C.A.) 229 F. 660, affirmed 245 U.S. 1, 38 S.Ct. 1, 62 L.Ed. 113.

The complaint should be dismissed, and the proceeds of the policy in question paid to the Marine Trust Company, as trustee.

Findings may be submitted to be, and be considered to be, a part of this opinion.